Argued and submitted March 3, decision of the Court of Appeals reversed July 6, 1988

COOK,
dba Gresham Health Center
Nurse Practitioner Clinic,
*Petitioner on Review,*

*v.*

WORKERS' COMPENSATION DEPARTMENT,
*Respondent on Review.*

(WCD 6-1985; CA A38782; SC S34626)

758 P2d 854

Vernon Cook, Gresham, argued the cause and filed the amended petition and supplement to amended petition on behalf of the petitioner on review.

Jerome Lidz, Chief Civil Attorney, Salem, argued the cause on behalf of the respondent on review.

GILLETTE, J.

Peterson, C. J., dissented and filed an opinion in which Jones, J., joined.

## GILLETTE, J.

Petitioner brought an original proceeding in the Court of Appeals challenging the validity of an administrative rule promulgated by the Workers' Compensation Department (the department).[1] The rule limits the circumstances under which an insurer or a self-insured employer may be required to reimburse a nurse practitioner[2] who provides medical services relating to a compensable illness or injury. OAR 436-10-050(4).[3] Petitioner argues that a nurse practitioner is a "doctor or physician" as those terms are defined by statute and

---

[1] ORS 183.400 provides, in part:

"(1) The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases. The court shall have jurisdiction to review the validity of the rule whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question, but not when the petitioner is a party to an order or a contested case in which the validity of the rule may be determined by a court.

"* * * * *

"(3) Judicial review of a rule shall be limited to an examination of:

"(a) The rule under review;

"(b) The statutory provisions authorizing the rule; and

"(c) Copies of all documents necessary to demonstrate compliance with applicable rulemaking procedures.

"(4) The court shall declare the rule invalid only if it finds that the rule:

"(a) Violates constitutional provisions;

"(b) Exceeds the statutory authority of the agency; or

"(c) Was adopted without compliance with applicable rulemaking procedures."

[2] ORS 678.010(4) defines "nurse practitioner" as "a registered nurse who has been certified by the [Oregon State B]oard [of Nursing] as qualified to practice in an expanded specialty role within the practice of nursing." *See generally* ORS 678.375 - 678.390.

The specialty began to receive formal educational recognition in 1965. Robinson, "The Nurse Practitioner: Expanding Your Limits," 36 RN Magazine No. 11 (November, 1973) 27, at 29. The effectiveness of such specialists in providing primary health care was first documented for the general health care community in Spritzer, *et al,* "The Burlington Randomized Trial of the Nurse Practitioner," 290 N. Engl. J. Med. 251 (1974).

[3] At the time relevant to this proceeding, OAR 436-10-050 read as follows:

"(1) Physicians licensed by the Board of Medical Examiners, the Board of Dental Examiners, the Board of Chiropractic Examiners, and the Board of Naturopathic Examiners may be designated as attending physicians.

"(2) Attending physicians may prescribe treatment to be carried out by persons licensed to provide a medical service, or by persons not licensed to provide a medical service who work under the direct control and supervision of the attending physician.

"(3) The insurer may pay for treatment by prayer or spiritual means.

"(4) A nurse practitioner who is a family nurse practitioner or an adult nurse

that the department exceeded its authority in restricting reimbursement for nurse practitioners. Alternatively, she argues that the challenged rule violates Article I, section 20, of the Oregon Constitution and the Fourteenth Amendment to the United States Constitution, because it unreasonably differentiates between nurse practitioners and physician's assistants by imposing fewer restrictions on a physician's assistant's eligibility for reimbursement. We agree with the first argument.

The Court of Appeals initially upheld the rule without opinion. *Cook v. Workers' Compensation Department*, 85 Or App 219, 736 P2d 230 (1987). On reconsideration, the court withdrew its decision because "[a] challenge to an administrative rule in this court is an original proceeding, and our determination of the rule's validity should, generally, be by written opinion." *Cook v. Workers' Compensation Department*, 87 Or App 486, 487, 742 P2d 714 (1987). The court again upheld the challenged rule, stating that "[w]e have considered petitioner's arguments challenging the validity of OAR 436-10-050 and find them to be without merit." *Id.* This court allowed review. We find that the department misinterpreted the pertinent provision of law and, therefore, exceeded its authority in promulgating the challenged rule. Accordingly, we reverse the Court of Appeals.

■     We first consider petitioner's argument that the

practitioner as defined in OAR 851-30-002, and licensed under ORS 678.375, may provide such services as the license permits, and be reimbursed as provided by OAR 436-10-090(7), when the following conditions are met:

"(a) The insurer is not required to reimburse a nurse practitioner for treating a disabling injury or illness unless the worker has been referred for treatment by the worker's attending physician, who shall remain the attending physician.

"(b) The insurer is not required to pay for treatment prescribed by a nurse practitioner when that treatment is performed by a person not licensed to provide such treatment.

"(c) The nurse practitioner is not an attending physician and, therefore, cannot authorize time loss or do closing evaluation examinations and reports, or other similar functions which may be done only by an attending physician.

"(5) A physician assistant, registered under ORS 677.515, may provide services and be reimbursed as provided by OAR 436-10-090(7) only under the following conditions:

"(a) The physician assistant is approved for independent practice by the Board of Medical Examiners.

"(b) The physician assistant may prescribe treatment to be performed by others only when the person who is to provide the treatment is licensed to do so."

department lacked the statutory authority to promulgate the challenged rule. *See Planned Parenthood Assn v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984). The director of the Workers' Compensation Department is vested with the general authority to promulgate rules "which are reasonably required in the performance of the director's duties" of administering, regulating and enforcing the workers' compensation laws. ORS 656.726(3)(a). The duty to administer the Workers' Compensation Law requires that the director apply the statutes to individual factual situations. That process necessarily involves interpretation of statutory terms, either by rule or by order in a contested case. It follows that the director had the *authority* to promulgate a rule interpreting the meaning of the statutory terms "doctor or physician." The question remains — was that interpretation correct?

■       For the purposes of the Workers' Compensation Law, the legislature has defined a "doctor or physician" as:

> "[A] *person* duly *licensed to practice one or more of the healing arts* in this state within the limits of the license of the licentiate. 'Attending physician' means a doctor or physician who is primarily responsible for the treatment of a worker's compensable injury. 'Consulting physician' means a doctor or physician who examines a worker or the worker's medical record to advise the attending physician regarding treatment of a worker's compensable injury." (Emphasis supplied.)

ORS 656.005(12). Although the department has the authority to interpret the statutory terms, "doctor or physician," that interpretation must be consistent with the policy underlying the legislative enactment. An administrative agency may not, by its rules, amend, alter, enlarge or limit the terms of a statute. *U. of O. Co-oper. v. Dept. of Rev.*, 273 Or 539, 550, 542 P2d 900 (1975). The question before this court is whether the department's interpretation of the statutory language comports with the statutory intent. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 228, 621 P2d 547 (1980).

■       When OAR 436-10-050 originally was promulgated in 1982, it authorized reimbursement for nurse practitioners who practiced in areas defined by the State Health Planning and Development Agency as medically underserved. The rule thus recognized the special, hybrid status of the nurse practitioner, different both from a traditional nurse and a traditional doctor. In 1985, the rule was amended to delete that provision and

add a provision that treatment by a nurse practitioner for a disabling illness or injury would be reimbursable only if the patient were referred to the nurse practitioner by the attending physician. Exhibit C to the 1985 amendment explains the agency's reasoning:

> "There was considerable testimony from nurse practitioners regarding the proposed rule, and the testimony was unanimous in objecting to any limitation on nurse practitioners, be it geographical or scope of practice, or any limitation regarding the extent of an injury that they could treat and be reimbursed for by the system.

> "The intent of the rule was to allow nurse practitioners to treat nondisabling injuries and treat disabling injuries only when the patients were referred by attending physicians who would remain attending physicians and were in control of the case. This would remove the geographic limitation and allow all adult nurse practitioners and family nurse practitioners to treat nondisabling injuries, but would not designate them as attending physicians and *it is the opinion of the department that the definition is defined in the statute and the department cannot expand the definition. * * *.*" (Emphasis added).

It is apparent that the department concluded that nurse practitioners did not qualify as "doctors or physicians" under the statutory definition and therefore declined to permit their designation as attending physicians.[4] For the reasons that follow, we hold that the department was incorrect in so concluding and therefore erred in adopting a rule that excludes nurse practitioners from the statutory definitions of "physician" and "attending physician."

For the purposes of the Workers' Compensation Law, a "physician" or "doctor" is defined, in part, as a person "licensed to practice one or more of the healing arts." ORS 656.005(12). The issue before this court turns on the meaning of the term, "healing arts." No Oregon statute or Supreme Court opinion defines that term, nor (so far as we can determine) does it have any special and immutable meaning either

---

[4] Under the workers' compensation scheme, it may be that the only practical benefit nurse practitioners will derive from the status of "doctor or physician" is the eligibility to be designated as an "attending physician." OAR 436-10-060(2) provides that a worker may have only one attending physician at a time, and that treatment by other physicians must be at the "request" of the attending physician. Treatment by nurse practitioners must be initiated by a "referral" from the attending physician. OAR 436-10-005(4).

in medicine or in the law. Although the term is used in various contexts throughout the Oregon Revised Statutes, no clear meaning can be distilled from those provisions. Neither has our research with respect to other jurisdictions produced much help. What law we have been able to find is primarily statutory. A summary of laws from other jurisdictions appear in the Appendix.

The definition of "doctor or physician" in ORS 656.005(12) was added by the 1957 legislature and has not been amended. Or Laws 1957, ch 718, § 1. The definitions of "attending physician" and "consulting physician" were added in 1979. Or Laws 1979, ch 839, § 26. The legislative history does not include specific discussion of those definitions. Certainly, nothing in the legislative history demonstrates any legislative intent to limit the broad, generic meaning of the term, "healing arts."

The department argues that, at the time the language defining "doctor or physician" was added to the Workers' Compensation Law, the term, "healing arts," was defined in ORS chapter 676, which dealt with the health professions generally. *Former* ORS 676.140 provided, in part:

"Each board licensing any person to practice any healing art in this state shall file with the Secretary of State a list of all persons licensed by such board to practice such healing art, together with the last known address of each of such persons."

The department notes that a 1949 attorney general opinion responded to the Board of Nursing's inquiry whether they were subject to the requirements of *former* ORS 676.140. The attorney general concluded that nursing was not a "healing art." 24 Op Att'y Gen 287 (Or 1949). That conclusion was based on the predecessor to ORS 676.110, which then provided:

"Any person practicing any of the healing arts or the corrective art of optometry who uses the title 'doctor' or any contraction thereof, 'clinic,' 'institute,' 'specialist' or any other assumed or artificial name or title, in connection with his business or profession, on any written or printed matter, or in connection with any advertising, billboards, signs or professional notices, shall add after his name or after any such assumed or artificial names, one of the following respective designations:

"(1)   In the case of a person practicing chiropody, the word 'chiropodist';

"(2)   In the case of a person practicing chiropractic, the word 'chiropractor' or the words 'chiropractic physician';

"(3)   In the case of a person practicing dentistry, the word 'dentist' or the words 'dental surgeon';

"(4)   In the case of a person practicing naturopathy, the word 'naturopath' or the words 'naturopathic physician';

"(5)   In the case of a person practicing the corrective art of optometry, the word 'optometrist';

"(6)   In the case of a person practicing osteopathy, the word 'osteopath' or [']osteopathic physician and surgeon';

"(7)   In the case of a person practicing medicine or surgery, the word 'physician' or the word 'surgeon' or the words 'physician and surgeon';

"(8)   In the case of a person practicing veterinary medicine, the word 'veterinarian.' "

OCLA § 54-151.

The attorney general's opinion read the statute quoted above as an exclusive list of designations for practitioners of the healing arts. Because the statute did not refer to the practice of nursing, the attorney general concluded that nursing was not a "healing art" and, therefore, the Board of Nursing need not provide the secretary of state with a list of licensed nurses under the predecessor to *former* ORS 676.140. *See also* 33 Op Att'y Gen 294 (Or 1967) (limiting healing arts practitioners to those listed in ORS 676.110 for purposes of statute requiring that "the certificate of a person licensed in this state to practice any of the healing arts" accompany application for absentee ballot on grounds of physical disability).

The department relies on essentially the same reasoning as the two attorney general opinions cited above. It argues that, when the 1957 legislature used the term, "healing arts," it intended the term to encompass only those professions listed in the former version of ORS 676.110. We disagree.

We first note that, in 1957, ORS 676.110 did not expressly purport to define all practitioners of the healing arts. It applied only to those practitioners of the healing arts

"who use[d] the title 'doctor' * * *, 'clinic,' 'institute,' 'specialist' or any other assumed or artificial name or title, in connection with his business or profession, on any written or printed matter, or in connection with any advertising, billboards, signs or professional notices * * *."

Second, even if ORS 676.110 were intended to be an exhaustive list of healing arts practitioners for the purpose of advertising regulation, there is no indication that the 1957 legislature intended to incorporate that list into its definition of "doctor or physician" in an entirely unrelated workers' compensation provision.

The term "healing arts" is not a static concept, capable of only one definition, now and forever. Instead, it is an example of the familiar legislative penchant for using general terms like a bucket, allowing various concepts to fall in (or out) with the passage of time. What is a "healing art" may have differed between 1957 and today, just as, for example, the concept of "vehicle" changed between 1890 and the present. But the legislature need not constantly update each new addition to either class — the general terms are broad and flexible enough to adjust to changing circumstances. The question therefore is, do "nurse practitioners" do things that make them practitioners of the "healing arts"?

They do. Nurse practitioners are licensed to provide "primary health care," which is defined as "holistic health care which the client receives at the first point of contact with the health care system and is continuous and comprehensive." OAR 851-50-000(3)(k); (n). OAR 851-50-005(2) provides:

"The nurse practitioner is *independently responsible and accountable for* the continuous and comprehensive management of a broad range of personal health services, which may include:

"(a)   Promotion and maintenance of health;

"(b)   Prevention of illness and disability;

"(c)   Management of health care during acute and chronic phases of illness;

"(d)   Guidance and counseling for both individuals and families;

"(e)   Consultation and/or collaboration with other health care providers and community resources;

"(f)   Referral to other health care providers and community resources." (Emphasis supplied.)

Nurse practitioners also are eligible to apply for prescription privileges upon completion of an approved course of pharmacology. OAR 851-50-120; 851-50-125.

Absent any indication to the contrary, we assume that the legislature intended to give the term, "healing arts," its literal meaning, unless to do so would be so contrary to the statutory policy that it would bring about an absurd result. *Johnson v. Star Machinery Co.*, 270 Or 694, 703-4, 530 P2d 53 (1974). "Healing" is generally defined as "curative." *See, e.g.,* Webster's Third New International Dictionary (1971). A "healing art" would be commonly understood as the skill to treat disease or disability and, where the nature of the problem permits, to restore health. A nurse practitioner is qualified to provide comprehensive, independent medical care in the form of diagnosis, treatment, advice and referrals. Those services certainly fall within the commonly understood meaning of a "healing art." We conclude that the statutory definition of "doctor or physician" in ORS 656.005(12) includes a nurse practitioner.[5]

We turn to the question whether a nurse practitioner may be designated as an "attending physician" as that term is defined in ORS 656.005(12). An attending physician is a doctor or physician who is "primarily responsible for the treatment of a worker's compensable injury." ORS 656.005(12). ORS 656.245(3) allows a worker to "choose an attending doctor or physician within the State of Oregon." Those provisions appear to contemplate that a worker may select any doctor or physician in the state to be the attending physician. The legislature has not demonstrated any intent to impose higher professional standards on attending physicians than it imposes on doctors and physicians. Thus, to be eligible for designation

---

[5] Put another way, the legislature here has used certain terms ("doctor" and "physician") in a manner that varies from a dictionary definition or common understanding. The legislature has seen fit to define the two professional categories in question by description of what the categories do — "practice healing arts." By this loose description, other professional categories qualify under the description. It is as if the legislature sought to define a "duck" as a feathered bird, with a bill, two feet and two wings. It should come as no surprise that other winged fowl qualify under that description. Hence, for purposes of the definition, a turkey would be a duck, if only in the wisdom of the legislature and for the purposes of the statute in question.

as an attending physician, a practitioner must be: (1) a "doctor or physician" under ORS 656.005(12); (2) capable of assuming primary responsibility for the treatment of the compensable condition; and (3) practicing in Oregon. We have already concluded that a nurse practitioner is included in the phrase, a "doctor or physician," as that term is used broadly in ORS 656.005(12). Nurse practitioners are licensed to provide primary health care and are, by rule, "independently responsible" for health services. We therefore hold that those nurse practioners who practice in Oregon are eligible to be designated as attending physicians.[6] To the extent that OAR 436-10-050 does not allow nurse practitioners to be designated as attending physicians, it is inconsistent with the legislative policy underlying ORS 656.005(12).

■   The decision of the Court of Appeals is reversed. The rule, OAR 436-10-050(4), is declared invalid to the extent set out in this opinion.

## APPENDIX

The following is a breakdown of the way the term, "healing arts," is used in other jurisdictions:

I.   *Statutes that exclude nursing from definitions of the term, "healing arts."*

A.   The following statutes define a "healing art" as one of several listed occupations which do not include nursing:

*Connecticut:* Conn Gen Stat Ann § 20-1 (West 1988) ("the practice of medicine, osteopathy, chiropractic, podiatry and naturopathy").

*Florida:* Fla Stat Ann § 456.32(2) (1981) (for purposes of referring patients to hypnotists, healing arts practitioners are limited to practitioners of "medicine, surgery, psychiatry, dentistry, osteopathic medicine, chiropractic, naturopathy, podiatry, chiropody, and optometry"). *See also* Fla Stat Ann § 483.041(8) (West 1988) (dealing with health testing services) ("licensed practitioner of the healing arts" includes only a physician, a dentist, a podiatrist, or a naturopath).

---

[6] Petitioner has pointed out that nurse practitioners are paid at a lower rate than "physicians." OAR 436-10-090. Our holding should not be read as requiring that all "physicians" be paid at the same rate.

*New Mexico:* NM Stat Ann § 59A-22-32(B)(2) (1978) (for purposes of health insurance contracts, "practitioner of the healing arts" includes only chiropractors, dentists, medical doctors and surgeons, and osteopaths). *See also* NM Stat Ann § 62-8-10 (applying the same definition to a statute prohibiting the termination of utility service to a residence in which a seriously ill person resides, if a practitioner of the healing arts certifies that termination of service might endanger that person's life).

*Kentucky:* "Healing art" includes "the practices of medicine, osteopathy, dentistry, chiropody (podiatry), optometry, and chiropractic, but does not include the practices of Christian Science or midwifery." Ky Rev Stat § 311.271(2)(a) (1983). The definition is not entirely clear, but it does not appear to include nursing.

B. The following statutes also exclude nursing from their definitions of the healing arts:

*District of Columbia:* DC Code Ann § 2-1301(2)(E) (1981) specifically excludes nursing from its definition of "the healing art."

*Texas:* Tex Rev Civ Stat Ann art 4590e, § 2 (Vernon 1976) defines "healing art" as "any system, treatment, operation, diagnosis, prescription or practice for the ascertainment, cure, relief, palliation, adjustment or correction of any human disease, ailment, deformity, injury or unhealthy or abnormal physical or mental condition." However, section 3 of that provision requires that all practitioners of "the healing art" use one of a list of legally required identifications. The listed identifications are appropriate only for practitioners of medicine, dentistry, chiropractic, optometry, chiropody and naturopathy. Nursing is not included.

II. *Statutes with broad, general definitions.*

These statutes generally define the term, "healing art," as the diagnosis and treatment of human disease or disability. Theoretically, that definition is broad enough to encompass nursing, although it is not clear in any case whether it does so.

*Kansas:* Kan Stat Ann § 65-2802(a) (1985). Kansas does, however, have both a "Board of Healing Arts" and a "Board of Nursing."

*Minnesota:* Minn Stat Ann § 146.01 (West Supp 1988).

*Nebraska:* Neb Rev Stat § 71-101.01 (1986).

*Nevada:* Nev Rev Stat § 630.060(4)(b) (1983) (adds the requirement that "for the practice of which long periods of specialized education and training and a degree of specialized knowledge of an intellectual as well as physical nature are required"). *See also* Nev Rev Stat § 633.051 (same definition in chapter governing osteopathic medicine).

*Oklahoma: Former* Okla Stat Ann tit 59 § 702 (West 1971), *repealed by* Okla Laws 1973, c. 48.

*Pennsylvania:* 1 Pa Cons Stat Ann § 1991 (Purdon Supp 1988).

*South Dakota:* SD Codified Laws Ann § 36-2-1(3) (1986).

*Tennessee:* Tenn Code Ann § 63-1-102(2) (1986) (specifically includes practice of acupuncture).

*Virginia:* Va Code § 54-273 (Supp 1987).

## DEFINITIONS FROM OTHER SOURCES

*Ohio:* An administrative rule governing habilitation centers for mentally retarded persons defines "practitioner of the healing arts" as "physicians, nurses, psychologists, occupational therapists, physical therapists, and speech pathologists/audiologists." OAC 5123:2-15-01(B)(9) (Baldwin 1988).

*Illinois: Lyon by Lyon v. Hasbro Industries, Inc.,* 156 Ill App 3d 649, 509 NE2d 702 (1987), defined the term, "healing art," for the purposes of the state "healing art malpractice" statute. The court concluded that the phrase "by definition implies an entire branch of learning dealing with the restoration of physical or mental health," and that it was broad enough to cover ambulance service. Thus, an allegation that the service negligently failed to provide equipment necessary to facilitate emergency health care was an allegation of "healing art malpractice." 509 NE2d at 706.

**PETERSON, C. J.,** dissenting.

The question is whether the words "doctor" or "physician," as used in current ORS 656.005(12), include nurse

practitioners. The answer to this question is "no." I base my conclusion largely upon an examination of the statutes in effect in 1957, when the legislation that first defined the terms "doctor" and "physician" in ORS chapter 656 was enacted.

The first sentence of current ORS 656.005(12) was enacted in 1957 as ORS 656.002(17). Or Laws 1957, ch 718, § 1(17). It read (and as part of current ORS 656.005(12) still reads): " 'Doctor' or 'physician' means a person duly licensed to practice one or more of the healing arts in this state within the limits of the license of the licentiate." I shall show, by reference to (1) the meaning of "doctor" or "physician," (2) the meaning of "healing arts," and (3) the meaning of the phrase "duly licensed to practice * * * in this state within the limits of the license of the licentiate" that the legislature, in passing that legislation, had in mind the class of persons who could diagnose, prescribe and treat persons and who could use the title "doctor" or "physician," persons such as chiropractic physicians, naturopathic physicians, dentists, osteopathic physicians, chiropodists, and physicians and surgeons.

## 1. THE 1957 LEGISLATION

Prior to 1957, workers' compensation benefits were payable to a worker who "sustains a personal injury by accident arising out of and in the course of his employment caused by violent or external means." ORS 656.202(1) (1955). Labor organizations and others maintained that this definition was too restrictive. *See* Minutes, House Labor and Industries Committee (March 26, 1957; May 6 and 8, 1957).

In 1957, legislation was introduced to relax that definition. The legislation was introduced as House Bill 12. Minutes of the Labor and Industries Committee of the House of Representatives for May 6, 1957 contain this explanatory statement as to the measure's purpose:

> "George Brown [George Brown was Political Director of the Oregon AFL/CIO] explained that this bill has as its primary purpose the elimination of the definition of an accident relating it to violent external means. He briefly explained the amendments in the engrossed bill. It was agreed to hold this bill over to the next agenda, to give the Committee members time to study it."

The only specific reference in the legislative history to the language at issue in this case is the following:

> "Representative Lent moved to amend HB 12 as follows: * * * (17) 'Doctor' or 'Physician' means a person duly licensed to practice one or more of the healing arts in this state within the limits of the license of the licentiate. Motion carried."

Minutes, House Labor and Industries Committee (March 26, 1957). The legislative history does not show why Representative Lent proposed the amendment.

## 2. "DOCTOR" OR "PHYSICIAN" MEANS A DOCTOR OR PHYSICIAN.

The meaning of ORS 656.002(17), as passed in 1957, becomes clear when other sections of ORS chapter 656 (1957) and other statutes in ORS chapters 676 and 678 (1957) are compared. It is not inappropriate to observe first, however, that the plain meaning of ORS 656.002(17), as passed in 1957, likely was that "doctor" or "physician" meant doctors or physicians practicing one or more of the healing arts.

In 1957, nurses were forbidden from performing "acts of diagnosis or prescription of therapeutic or corrective measures." The last sentence of *former* ORS 678.015 (1957) provided: "This section does not authorize a licensed professional nurse to perform acts of diagnosis or prescription of therapeutic or corrective measures."

Other sections of chapter 656 (1957) referred to the type of work that "doctors" and "physicians" were expected to perform under the Workers' Compensation Law.

One statute required a physician's report. *Former* ORS 656.272(1) in 1957 provided in part: "The physician who attends the workman shall file with the Commission a report on forms furnished by the commission." This form, now Department of Insurance and Finance Form 827, requires diagnostic information, the type of information that only a doctor could furnish. *See* OAR 436-10-030.

Another 1957 workers' compensation statute, ORS 656.806, provided that "[a]s a prerequisite to employment in any case, a prospective employer may, by written direction, require any applicant for such employment to submit to a physical examination by a doctor to be designated by the State

Industrial Accident Commission * * *." These statutes suggest that "doctor" or "physician" means a doctor or physician in the traditional sense, such as a medical doctor, osteopathic physician, chiropractic physician, naturopathic physician or podiatric physician.

Other sections of the 1957 Workers' Compensation Law confirm this analysis.

The 1957 Workmen's Compensation Occupational Disease Law, ORS 656.802 to 656.824, also contained provisions concerning physicians and doctors. *Former* ORS 656.810(1) provided for the appointment of "a medical board of review, which board of review shall have jurisdiction to pass upon and decide every issue involved in such [occupational disease] claim."

*Former* ORS 656.810(2) (1957) provided:

"The medical board of review shall be appointed in the following manner:

"(a)  One doctor from the list provided for by ORS 656.820 shall be named by the commission.

"(b)  One doctor from said list shall be named by the claimant.

"(c)  The two doctors so named shall, within five days after being notified of their appointment, name a third doctor from said list. If the third doctor cannot be agreed upon, or for any other reason has not been named within such period of time, the commission shall immediately so notify the presiding judge of the circuit court of the county in which the claimant resides, or upon agreement of the claimant and the commission, the circuit judge of the county in which the claim arose. Upon receipt of such notice, such presiding judge shall forthwith name the third member of such board of review from said list."

The duties of the medical board of review were set forth in *former* ORS 656.812 (1957). Subsection (2) required findings and "the answers to the following questions":

"(a)  Does claimant suffer from a disease or infection? If so, what?

"(b)  When was such disease or infection, if any, contracted, and approximately how long has claimant suffered therefrom?

"(c)   Is such disease or infection, if any, peculiar to the industrial process, trade or occupation in which claimant has been last employed?

"(d)   Has such disease or infection, if any, been caused by and did it arise out of and in the course of claimant's regular actual employment in such industrial process, trade or occupation?

"(e)   Is such disease, if any, disabling to the claimant?

"(f)   If so, to what degree is claimant disabled by such occupational disease?"

Nurses were not permitted to perform the type of work that *former* ORS 656.812(2) (quoted above) required, to diagnose the disease or infection, to decide whether the disease was related to the employment and to determine the extent of disability.

In sum, the statutes in ORS chapter 656 (1957) point to the conclusion that the "doctor" or "physician" referred to in ORS 656.002(17) (1957) were persons authorized to prescribe, diagnose, treat and evaluate injuries, illnesses and disease. Nurses had no such authority. If there is any remaining doubt, that doubt is dispelled by examining other statutes in the context of the "healing arts" language of ORS 656.002(17) (1957).

### 3.   MEANING OF "PRACTICE OF THE HEALING ARTS."

The only 1957 statutes that speak of the "healing arts" are statutes concerning doctors or physicians—doctors or physicians who are called "doctors" or "physicians." ORS 676.110 (1957) provided:

"Any person *practicing any of the healing arts* or the corrective art of optometry who uses the title 'doctor,' or any contraction thereof, 'clinic,' 'institute,' 'specialist' or any other assumed or artificial name or title, in connection with his business or profession, on any written or printed matter, or in connection with any advertising, billboards, signs or professional notices, shall add after his name, or after any such assumed or artificial names, one of the following respective designations in letters or print which shall be at least one-fourth the size of the largest letters used in the title or name, and in material, color, type or illumination to give display and legibility of at least one-fourth that of the title or name:

"(1)   In the case of a person practicing chiropody, the word 'chiropodist.'

"(2)   In the case of a person practicing chiropractic, the word 'chiropractor' or the words 'chiropractic physician.'

"(3)   In the case of a person practicing dentistry, the word 'dentist' or the words 'dental surgeon.'

"(4)   In the case of a person practicing naturopathy, the word 'naturopath' or the words 'naturopathic physician.'

"(5)   In the case of a person practicing the corrective art of optometry, the word 'optometrist.'

"(6)   In the case of a person licensed to practice osteopathy and surgery by the Board of Medical Examiners of the State or Oregon, the word 'osteopath' or the words 'osteopathic physician' or 'osteopathic physician and surgeon.'

"(7)   In the case of a person licensed to practice medicine and surgery by the Board of Medical Examiners of the State or Oregon, the word 'physician' or the word 'surgeon' or the words 'physician and surgeon.'

"(8)   In the case of a person practicing veterinary medicine, the word 'veterinarian.' " (Emphasis added.)

From these statutes, I conclude that (1) "doctor" or "physician" meant a person who could call herself or himself a doctor or physician, and (2) that the "practice * * * of the healing arts" reference in ORS 656.002(17) (1957), likely was to the persons "practicing any of the healing arts" referred to in ORS 676.110 (1957)—medical doctors, chiropractic physicians, osteopathic physicians, naturopathic physicians, dentists and chiropodists.

## 4.   MEANING OF "WITHIN THE LICENSE OF THE LICENTIATE."

Any remaining doubt is dispelled by the third referent—"within the limits of the license of the licentiate." That very phrase appears in the 1957 ORS chapter concerning nurses, chapter 678, *but as a description of what nurses can do while working under the direction and control of a "licentiate."* ORS 678.031(4) in 1957 provided:

"ORS 678.010 to 678.160 [the statutes governing the nursing profession] shall not be construed to affect or prevent:

"* * * * *

"(4) Services and acts of technicians, assistants and other persons performed under the direction and control of persons duly licensed to practice medicine or surgery, osteopathy, dentistry, chiropractic, naturopathy or chiropody in this state within the limits of the license of the licentiate under whose direction and control the services and acts are performed; provided, that nothing in this Act shall be construed to permit any person who is not licensed under ORS 678.010 to 678.170 by the Oregon State Board of Nursing to do any act prohibited by subsection (2) of ORS 678.021."

The phrase "within the limits of the license of the licentiate" clearly refers to the antecedent class of licentiates — "persons duly licensed to practice medicine or surgery, osteopathy, dentistry, chiropractic, naturopathy or chiropody." I have little doubt that ORS 656.002(17) (1957) derives directly from ORS 678.031(4) (1957).

Supporting this conclusion is a 1949 opinion of the Attorney General which, in 1957, was still fairly recent. *See* 24 Op Att'y Gen 287 (Or 1949), discussed in the majority opinion at 306 Or at 140-41. *See also* 33 Op Att'y Gen 294 (Or 1967), mentioned in the majority opinion at 306 Or at 141.

I should add that construing ORS 656.002(17) (1957) as would the majority, made doctors, in 1957, of dental hygienists, licensed practical nurses and masseurs as well as nurses.

## 5. CONCLUSION

From the foregoing study of the 1957 statutes, there can be no doubt that the source of the "healing arts" language of ORS 656.002(17) (1957) was ORS 676.110 (1957), and that the term "physician," as used in ORS 656.002(17) (1957) meant medical doctors, chiropractic physicians, osteopathic physicians, naturopathic physicians, dentists and chiropodists. Similarly, there can be no doubt that the "within the license of the licentiate" language in the 1957 statute came from a nursing statute, ORS 678.031(4), a statute that precisely tracked ORS 676.110 (1957) in its specific reference to medical doctors, osteopathic physicians, chiropractic physicians, naturopathic physicians, chiropodists and dentists.

What has happened since 1957 to change or modify that legislative intent? The nurse practitioner statutes were

enacted in 1975. What was the legislative intent in 1975? ORS 676.110 was still in effect. It still referred to the same class of healing arts-practitioner-podiatrists (formerly chiropodists), chiropractic physicians, dentists, naturopathic physicians, osteopathic physicians, and medical doctors.

The ORS 676.110 reference to "healing arts" was not deleted until 1983, when it was replaced with the term "health care profession." Or Laws 1983, ch 769, § 1. The changes were made at the request of the Oregon Board of Optometry.[1]

ORS 678.031(4) (1957) — the statute that concerned the "license of the licentiate" — was amended in 1973, two years before the enactment of the nurse-practitioner legislation, in recognition of the enlarged role of nurses in diagnosing and treating persons with health problems. *See* ORS 678.010(5) (1973). In 1973 and 1975, however, as now, ORS chapter 678 contained a definition of "physician" as "a person licensed to practice under ORS chapter 677." ORS 678.010(4) (1973); ORS 678.010(5) (1975); ORS 678.010(5) (1987).

Nothing in the legislative history of Oregon Laws 1975, chapter 205 suggests that the legislature intended that nurse practitioners would be "doctors" or "physicians" under the then or present version of ORS 656.005(12). Rather, as the definition of nurse practitioner provides:

> " 'Nurse practitioner' means a registered nurse who has been certified by the [Oregon State Board of Nursing] as qualified to practice in an expanded specialty role *within the practice of nursing.*"

ORS 678.010(4) (emphasis added).

---

[1] The 1983 legislature replaced the phrase "any of the healing arts or the corrective art of optometry" with the phrase "a health care profession." The explanation for the change is in a Senate Exhibit submitted by the Oregon Board of Optometry:

" 'Health-care profession' is a more contemporary and descriptive term than is "Healing art" and the Oregon Board of Optometry is requesting a change in [the] statute to describe all health care professions by the same descriptive term.

"Optometry is a profession which involves diagnosis and treatment of problems relating to human vision. Treatment involves the correction and prevention of problems and the restoration of health function. A dictionary defines 'heal' as 'to make sound or whole'; 'to restore health'; and to 'cause (an undesirable condition) to be overcome.' Optometry is, therefore a healing art."

Exhibit A, Senate Committee on Human Services and Aging (June 23, 1973) (statement of Oregon Board of Optometry).

The 1975 nurse practitioner statutes, ORS 678.375 to 678.410, suggest that the "expanded specialty role" consists primarily of the nurse practitioner's eligibility to apply for drug prescribing authority. These statutes did not make "doctors" or "physicians" out of nurse practitioners in any sense. Rather the 1975 legislation merely "expanded" the power, authority and rights of those in the "practice of nursing" who qualify as "nurse practitioners." The "practice of nursing" still "includes executing medical orders as prescribed by a physician or dentist." ORS 678.010(6). The distinction between physicians or doctors and nurses remains clear under the very chapter upon which the majority relies to set nurse practitioners apart from nurses and to class nurse practitioners as physicians. *See* ORS 678.010(5) (" 'Physician' means a person licensed to practice under ORS chapter 677.").

Nor did the addition of what is now the second sentence of ORS 656.005(12) (" 'Attending physician' means a doctor or physician who is primarily responsible for the treatment of a worker's compensable injury"), affect the issue before us. Pure and simple, nurses were not "doctors" or "physicians" under ORS 656.002(17) in 1957, and nothing has happened since then to suggest that the legislature meant to change the meaning of the first sentence of current ORS 656.005(12).

The majority reasons that the legislature intended to give the term "healing arts" its "literal meaning," 306 Or at 143. Under that reasoning, a host of other persons — physical therapists, radiologic technologists, audiologists, and dental hygienists — are "physicians" under ORS chapter 656.

The legislative intent is apparent and it is clear. The decision of the Court of Appeals should be affirmed.

Jones, J., joins in this dissent.