Argued and submitted December 7, 1993, reversed and remanded for
reconsideration February 15, 1995

In the Matter of the Compensation of
Manuel Altamirano, Claimant.

Manuel ALTAMIRANO,
*Petitioner,*

*v.*

WOODBURN NURSERY, INC.,
and EBI Companies,
*Respondents.*

(91-00697; CA A79706)

889 P2d 1305

Edward J. Harri argued the cause for petitioner. On the brief were Michael B. Dye and Stanley Fields.

Howard R. Nielsen argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Claimant seeks review of an order of the Workers' Compensation Board that affirmed employer's denial of his "current condition." Claimant also challenges the Board's denial of his request for interim compensation. We reverse.

The Board's findings are unchallenged. Claimant was employed as a nursery worker when he compensably injured his low back on February 22, 1990. Claimant was diagnosed with an acute lumbar strain, and employer accepted the claim. He returned to work in March, 1990, and his claim was closed on September 25, 1990.

Claimant continued to work until October 31, 1990, when his back pain increased and radiated down his leg. A CT scan showed a bulging disc at L5-S1. Claimant was released to sedentary work. In early December, 1990, claimant was no longer working. His physician believed that claimant was developing functional overlay.

On December 10, 1990, claimant sought treatment from Dr. Buttler, a chiropractor and naturopath. On the "Change of Attending Physician" form, Buttler noted that claimant's condition had worsened and that he was unable to work. In January, 1991, claimant was examined by Dr. Mitchell, who diagnosed chronic lumbar strain and suggested continued chiropractic treatment. Claimant was released to work in March, 1991. In May, he was examined for employer by an orthopedic surgeon and a chiropractor. He was diagnosed with lumbar strain, shallow left lumbar scoliosis, L5-S1 disc bulge and moderate to severe functional overlay.

On August 15, 1991, employer sent a letter denying reopening for aggravation, as well as the compensability of claimant's L5-S1 disc bulge, functional overlay, and claimant's then current condition. The Board set aside the denial of the aggravation claim and upheld the denials of the L5-S1 disc bulge and functional overlay, and the denial of claimant's then current condition. According to the Board, there was no indication at the time of denial that claimant required any medical services or that he was suffering any disability. The Board also held that claimant was not entitled to temporary disability benefits beginning on the date his claim for aggravation was made. It disagreed with claimant's assertion that

Buttler's December 10, 1990, letter taking claimant off work provided a basis for interim compensation, reasoning that the December 10 report was from a chiropractor, who was not authorized to be an attending physician who could authorize time loss. Claimant seeks review, claiming that employer improperly denied the current condition, and that he is entitled to interim compensation beginning on the date of Buttler's letter.

Claimant first assigns error to the Board's upholding the August 15, 1991, denial of his "then current condition." He argues that, because there was no claimed need for treatment at that time, the denial of his current condition constituted an invalid prospective denial. He asserts that the denial must have been intended as a denial of the compensability of his condition as of December, 1990, the date of the aggravation claim, and that that claim was accepted by order of the Board. Employer responds that the denial was for claimant's condition as of August 15, 1991, the date the denial was issued, and that it was entitled to deny that condition, because an employer can deny a current condition, so long as it does not deny future medical treatment or benefits. *See Boise Cascade Corp. v. Hasslen,* 108 Or App 605, 816 P2d 1181 (1991); *Green Thumb, Inc. v. Basl,* 106 Or App 98, 806 P2d 186 (1991).

At the outset, we reject claimant's assertion that the denial related to his condition as of December, 1990. The denial letter sent by employer referred to his "then current condition." That letter was dated August 15, 1991. There is nothing in the letter that could be read to relate the denial to anything other than claimant's condition as of the date of the letter.

An employer may not deny future benefits or disability on an accepted claim. *Evanite Fiber Corp. v. Striplin,* 99 Or App 353, 781 P2d 1262 (1989). An employer may deny specific unpaid services or a current claimed need for treatment; it may deny a current claimed need for treatment, even if there are no remaining unpaid medical bills. *Boise Cascade Corp. v. Hasslen, supra; Green Thumb, Inc. v. Basl, supra.* In every instance, however, there must be a *claim* for medical treatment or disability for the employer to deny. A "claim," for purposes of acceptance and denial, is "a written request for

compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge." ORS 656.005(6). In this case, employer purported to deny claimant's unspecified "current condition." The Board found that "[t]here is no evidence in this record that claimant's 'current condition' on August 15, 1991, required medical service or resulted in disability." Based on that finding, there was no claim. In the absence of a claim, there cannot be a denial that has any legal effect. Because there was no claim that claimant's unspecified current condition required medical treatment or resulted in disability, employer's attempted denial was ineffective. The Board erred in upholding the denial.[1]

■    Claimant next assigns error to the Board's denial of interim compensation. He asserts that the Board erred as a matter of law when it held that Buttler, the physician who took claimant off work, did not qualify as an attending physician who could authorize time loss, because he is a chiropractor. Claimant argues that ORS 656.005(12)(b) authorizes Buttler to be his attending physician for 30 days after the date of his first visit on the aggravation claim. That statute provides:

" 'Attending physician' means a doctor or physician who is primarily responsible for the treatment of a worker's compensable injury and who is:

"* * * * *

"(B)   For a period of 30 days *from the date of first visit on the claim* or for 12 visits, whichever first occurs, a doctor or physician licensed by the State Board of Chiropractic Examiners for the State of Oregon." ORS 656.005(12)(b). (Emphasis supplied.)

Employer responds that the term "claim" in the statute is ambiguous and is subject to agency interpretation. It asserts that OAR 436-10-005(1), which interprets "claim" in ORS 656.005(12)(b) to mean only the initial claim, is a permissible

---

[1] This case differs from *Weyerhaeuser Co. v. Warrilow*, 96 Or App 34, 771 P2d 295, *rev den* 308 Or 184 (1989), in which we held that a partial denial of a specific condition was valid. Unlike in *Warrilow*, in this case the denial is neither specific to a particular condition, nor does it relate to a condition that arguably could have been encompassed in a claim that was made.

agency interpretation of the statute, and precludes claimant's entitlement to interim compensation.

A claimant is entitled to receive interim compensation for disability from the date the claim is filed until the claim is accepted or denied. ORS 656.262(2); *Bono v. SAIF*, 298 Or 405, 692 P2d 606 (1984); *Jones v. Emanuel Hospital*, 280 Or 147, 570 P2d 70 (1977). Only an attending physician may authorize payment of temporary compensation. ORS 656.245(3)(b)(B).

By rule, the Department of Consumer and Business Services has limited the period during which a chiropractor can be an attending physician to 30 days after the first visit on the *initial* claim for compensation:

" 'Attending Physician' means a doctor or physician who is primarily responsible for the treatment of a worker's compensable injury or illness and who is:

"* * * * *

"(c)   For a period of 30 days from the date of first chiropractic visit *on the initial claim* or for 12 chiropractic visits during that 30 day period, whichever first occurs, a doctor or physician licensed by the State Board of Chiropractic Examiners for the State of Oregon * * *." OAR 436-10-005(1). (Emphasis supplied.)

"Initial claim" is defined to mean

"the first open period on the claim immediately following the original filing of the occupational injury or disease claim until the worker is first declared to be medically stationary by an attending physician." OAR 436-10-005(20).

Relying on those administrative rules, the Board held that, because claimant sought interim compensation for his aggravation claim rather than for an initial claim, claimant's release from work, provided by Buttler, a chiropractor, could not support his claim for interim compensation. Under OAR 436-10-005(1), Buttler did not qualify as an attending physician who could authorize time loss.

The word "claim" in ORS 656.005(12)(b) is an inexact statutory term, because the legislature expressed its meaning completely, but the meaning is subject to agency interpretation. *See England v. Thunderbird*, 315 Or 633, 638, 848 P2d 100 (1993); *Springfield Education Assn. v.*

*School Dist.*, 290 Or 217, 621 P2d 547 (1980). That does not mean, as employer seems to argue, that the interpretation is reviewable only for reasonableness. As the Supreme Court explained:

> "An inexact term gives the agency interpretive but not legislative responsibility. *See Springfield Education Assn. v. School Dist., supra*, 290 Or at 233 * * *. With respect to an inexact term, the role of the court is to determine whether the agency 'erroneously interpreted a provision of law,' ORS 183.482(8)(a), and the ultimate interpretive responsibility lies with the court in its role as the arbiter of questions of law. *Springfield Education Assn. v. School Dist., supra*, 290 Or at 234." *England v. Thunderbird, supra*, 315 Or at 638.

Accordingly, we review to determine whether the Department's interpretation of the term "claim" to mean "initial claim" is correct, *see SAIF v. Allen*, 320 Or 192, 209-10, 881 P2d 773 (1994); *England v. Thunderbird, supra*, 315 Or at 638, and conclude that it is not.

We begin with the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We apply the statutory definitions to terms in the workers' compensation statutes, "[e]xcept where the context otherwise requires." ORS 656.003.

> "[U]nder ORS 656.003, 'the context * * * requires' that a given statutory definition not apply when the context – including the structure and purpose of the workers' compensation scheme as a whole – demonstrates that the use of that given definition would be inappropriate, because the result of such use would conflict with one or more aspects of that structure or purpose." *Astleford v. SAIF*, 319 Or 225, 233, 874 P2d 1329 (1994).

Accordingly, we first look to the statutory definition to determine whether its use would be inappropriate, because it would conflict with the statute's structure or purpose. "Claim" is defined in ORS 656.005(6) as

> "a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge."

That definition encompasses not only claims for compensation for particular conditions, *e.g.*, initial claims and aggravation claims, but also any claim for medical treatment,

vocational assistance, and any other element of compensation. *See* ORS 656.005(8). That definition, if applied to the word claim in ORS 656.005(12)(b), would result in a new 30-day period each time a claimant received medical treatment, during which a chiropractor could act as an attending physician. Reading the statute in that way would make the 30-day time limitation wholly illusory. Because using the statutory definition of claim would conflict with the limitation that ORS 656.005(12)(b) imposes, we agree with the parties that the legislature did not intend that definition to apply to the use of the word claim in ORS 656.005(12)(b).

■ In the absence of a statutory definition, we ordinarily give words of common usage their plain, natural and ordinary meaning. *PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611. The word "claim" has a common meaning in the context of workers' compensation statutes: It is commonly used to refer to initial requests for compensation for a compensable injury or disease, and to requests to reopen a previously closed claim for additional compensation for the worsening of a compensable condition.

■ There is nothing in the text or the context of ORS 656.005(12)(b) to indicate that the legislature intended "claim" to mean anything other than what it is commonly understood to mean. Accordingly, we conclude that the legislature intended to use the term in that way. *See Cook v. Workers' Compensation Department*, 306 Or 134, 143, 758 P2d 854 (1988). The Department's rule, OAR 436-10-005-(1)(c), places a limitation on the statutory term by defining it to include only a part of its ordinary meaning. An agency may not, by its rules, limit the terms of a statute. *Cook v. Workers' Compensation Department, supra*, 306 Or at 138. Therefore, the Board erred in applying OAR 436-10-005(1)(c) to deny claimant's request for interim compensation.

Reversed and remanded for reconsideration.