Argued and submitted November 8, 2006, affirmed May 16, 2007

In the Matter of the Compensation of
Bryan K. Mills, Claimant.

Bryan K. MILLS,
*Petitioner,*

*v.*

THE BOEING CO.,
*Respondent.*

Workers' Compensation Board
0400942; A130079

159 P3d 375

Robert K. Udziela argued the cause and filed the briefs for petitioner.

Jerald P. Keene argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ROSENBLUM, J.

### ROSENBLUM, J.

Claimant seeks review of an order of the Workers' Compensation Board (the board) that reversed the administrative law judge's (ALJ's) order awarding benefits, assessing a penalty against employer, and granting attorney fees. We affirm.

On May 5, 2003, while working for employer, claimant slipped off a ladder and fell approximately three feet. He sought medical treatment for his right hip from Dr. Breen at the end of May. Claimant filed a workers' compensation claim and listed the date of injury as May 5, 2003. On the claim form, Breen diagnosed claimant with arthritis of the hip.

On August 11, 2003, employer's insurance carrier sent a letter denying claimant's claim:

> "RE:    Claim Number:   7870085182
>          Date of Loss:   *5/9/03*
>          Employer:       The Boeing Company
>
> "Dear Mr. Mills:
>
> "The information we have received to date is insufficient to support a finding that you have sustained a compensable injury or occupational disease arising out of and in the course and scope of your employment with the above-named employer.
>
> "This letter is a denial of the above claim. We will not be providing any workers' compensation benefits under this claim."

(Emphasis added.) In the caption of the denial, above the body of the letter, employer listed "5/9/03" as the "[d]ate of [l]oss," even though claimant had identified the date of injury as May 5, 2003. Claimant did not seek a hearing within 60 days. *See* ORS 656.319 (requiring that, under most circumstances, a request for a hearing be filed no more than 60 days after the denial is mailed).

In October 2003, claimant saw Dr. Toal regarding the continuing pain in his hip. Toal referred claimant to

Dr. Ellis to perform an MRI to rule out a labral tear.[1] In December 2003, after the MRI, Ellis diagnosed a right hip labral tear and mild hip arthritis and attributed claimant's symptoms to a traumatic labral tear. On February 5, 2004, more than 60 days after receiving the notice that his claim had been denied, claimant requested a hearing.

On February 18, 2004, claimant submitted a second job-injury report, this time identifying his injury as a right labral tear sustained on May 5, 2003. On February 26, 2004, the carrier responded that claimant had already filed such a claim, which had been denied. On March 1, claimant answered that the denial had been issued for a nonexistent "date of loss" (May 9, 2003) and for arthritis, and that the second job-injury report was filed for the correct date of injury (May 5, 2003) and a newly diagnosed condition (labral tear). On April 19, 2004, claimant requested a hearing, contending that the claim made by his second job-injury report had been *de facto* denied.

The ALJ presiding over that hearing agreed with claimant that the employer was bound by the typographical error of its denial of claimant's first job-injury report. *See Tattoo v. Barrett Business Service*, 118 Or App 348, 351, 847 P2d 872 (1993) ("[E]mployers are bound by the express language of their denials."). The ALJ reasoned that employer's letter denied a claim that was never made because claimant was not injured on May 9, 2003, and thus the denial was of no legal effect. Accordingly, the ALJ found that claimant had timely filed a request for a hearing from a *de facto* denial. The ALJ also reasoned that, even if the denial of the claim for arthritis was not a legal nullity under *Tattoo*, claimant's claim for a labral tear was not precluded under *Jeremy J. Hawkins*, 53 Van Natta 566 (2001). The ALJ ultimately concluded that the labral tear was a compensable injury, awarded benefits, assessed a penalty against employer, and granted attorney fees.

Employer appealed, and the board reversed the ALJ's order, finding that employer's denial responded to the only claim that claimant had filed and was therefore valid

---

[1] A "labral tear" is a tear in the cartilage that lines the socket of the hip joint.

despite the typographical error. The board also concluded that, because the letter denied that claimant had sustained *any* injury or occupational disease arising out of the course and scope of his employment, the claim for a labral tear fell within the denial's scope, and claimant was precluded from raising it because he did not timely request a hearing. Claimant seeks judicial review.

Claimant does not contest the board's factual findings that the "5/9/03" notation was a typographical error and that employer intended to deny the claim for an injury that occurred on May 5, 2003. Rather, he contends that the board failed to apply the correct legal standards when construing the denial. According to claimant, because he never filed a claim for an incident occurring on May 9, 2003, the board should have set aside the denial as a legal nullity. We review the claim that the board failed to correctly apply a legal standard for errors of law. ORS 183.482(8)(a).

In determining whether the board applied the correct legal standard when construing the denial, we begin with *Tattoo*. In that case, we considered whether a claims examiner's testimony that she intended to deny future treatment could be considered when construing the meaning of the denial for "current chiropractic care." We held that

"employers are bound by the express language of their denials and the testimony of the claims examiner here is irrelevant. * * * If we were to hold to the contrary, an employer could change what it had expressly said in a denial to the detriment of all parties who have relied on the language."

118 Or App at 351-52; *see also Sound Elevator v. Zwingraf*, 181 Or App 150, 154-55, 45 P3d 958, *rev den*, 334 Or 693 (2002) (where an employer issued a denial in response to an improperly filed claim, it was bound by the denial and the claimant was entitled to request a hearing).

■■ Although evidence that an employer intended something other than what it expressly said may not be considered in construing a denial, whether a denial is directed at a particular claim "does not depend solely on the words [the denial] uses." *SAIF v. Allen*, 193 Or App 742, 749, 91 P3d 808 (2004). It depends also on "the context in which [the denial] is

made * * * including what the insurer did or did not know" and the date the denial was sent. *Id.*; *see Altamirano v. Woodburn Nursery, Inc.*, 133 Or App 16, 19, 889 P2d 1305 (1995) (considering the date of the denial letter as context for the phrase "then current condition"); *Longview Inspection v. Snyder*, 182 Or App 530, 536, 50 P3d 1201 (2002) ("[A] general denial will put at issue all of the relevant medical conditions of which the employer was aware."). If, in context, the language of a denial has only one possible meaning, it must be read consistently with that contextual meaning. *See, e.g., Altamirano*, 133 Or App at 19 (deeming a denial ineffective where it could be read only to refer to a nonexistent condition).

■        Thus, the legal question before us is whether the board was permitted to consider, as context, the fact that claimant had filed only one claim when employer issued its denial. If so, then substantial evidence clearly supports the board's finding that the "5/9/03" notation could only refer to the May 5, 2003, injury, because employers do not spontaneously issue denials; they ordinarily issue denials only in response to claims. *See* ORS 183.482(8)(c) ("Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."); *see also Cervantes v. Liberty Northwest Ins. Corp.*, 205 Or App 316, 322, 134 P3d 1033 (2006) ("[I]t is highly unlikely that an insurer would issue a denial with the purpose of denying nothing.").

We do not understand *Tattoo* to prohibit consideration of the fact that claimant had filed only a single claim at the time of the denial. As we explained in *Columbia Forest Products v. Woolner*, 177 Or App 639, 645, 34 P3d 1203 (2001), *Tattoo* bars employers from denying a condition and later asserting a position that contradicts the express wording of the denial. Here, employer is not asserting a position inconsistent with the express language of the denial. Employer asserts that the denial's caption contained a typographical error that, in context, can only be understood to identify the only claim claimant had filed. That position is not inconsistent with the express wording of the denial.

In fact, claimant does not contend that he understood the denial to deny anything other than the claim he had made.[2] Nevertheless, he argues that the denial should be considered a legal nullity. He first relies on *Altamirano*. In *Altamirano*, the claimant sought to reopen an accepted claim for aggravation of the underlying injury but did not ask for medical treatment or disability benefits. The employer sent a letter denying benefits for the claimant's "then current condition." We concluded that, in the absence of a claimed need for medical treatment or disability, the denial had no legal effect because there was nothing for the employer to deny. *See id.* at 20. In contrast, in this case claimant *had* made a claim for medical treatment or disability. Moreover, there was only one injurious work event upon which that claim could have been based. The board therefore did not err under *Altamirano* by concluding that the denial had legal effect.

Claimant also argues that the board impermissibly departed from *George C. McCoy*, 50 Van Natta 49 (1998). *See Hays v. Tillamook County General Hospital*, 160 Or App 55, 59, 979 P2d 775 (1999) (once the board has announced a policy in issuing a decision, it must follow that policy in future decisions unless it sets forth adequate reasons for departing). In *McCoy,* the employer had accepted three separate claims for three injuries to the claimant's back. Six years after the last claim was accepted, the claimant submitted a job-injury report for lower back pain and listed the date of injury as March 11, *1985* (the date of his second accepted claim), but he did not make a claim for a new condition. *See* ORS 656.262(7)(a) (1995) (requiring that, after claim acceptance, new medical condition claims "clearly request formal written acceptance of the condition"). The carrier issued a denial of the "claim for an injury to your back which you believe occurred on or about March 11, *1995.*" *McCoy*, 50 Van Natta at 49-50 (emphasis added). Because the claimant had not made a claim for a new injury, the denial for a March 11, 1995, injury was issued in the absence of a claim and therefore a legal nullity.

---

[2] If claimant had not understood the letter to deny his claim, he may have been able to show good cause for failing to timely request a hearing under ORS 656.319. Claimant has not raised the issue of good cause.

The board in this case distinguished *McCoy,* concluding that here, unlike in *McCoy*, there was no prior accepted claim and the denial was directed at claimant's only pending claim for a new injury: "Under these circumstances, the employer's denial is not a nullity, as was the case in *McCoy*, since it did not deny a 'nonexistent' claim." We agree with the distinction that the board drew. Accordingly, the board did not err by concluding that the denial in this case was not a legal nullity.

■ We next consider whether substantial evidence supports the board's finding that the scope of the denial precluded claimant from asserting a new claim for a labral tear. *See Allen,* 193 Or App at 749 (the scope of employer's denial is a question of fact that we review for substantial evidence). Claimant argued to the board that, because his initial job-injury report related only to a claim for arthritis, the denial of that claim did not preclude him from asserting a subsequent claim for the newly diagnosed labral tear under *Hawkins,* 53 Van Natta 566. The board disagreed, reasoning that the denial in *Hawkins* was limited to a specific condition, but the denial in this case included all possible conditions that could have arisen from the May 5, 2003, accident. Based on that distinction, the board held that the doctrine of issue preclusion barred claimant from relitigating whether his injury was work-related.

We agree with the board. In *Hawkins*, the employer did not deny that the claimant experienced an electrical shock during the course and scope of his employment, but it denied that the claimant's circulatory system condition was caused by the electrical shock. *Hawkins,* 53 Van Natta at 566. Thus, the claimant was not precluded from contending that the electrical shock caused a later-diagnosed condition that was separate and distinct from the circulatory condition. Here, substantial evidence supports the board's finding that employer's August 11, 2003, letter denied that claimant had experienced any work-related injury. Thus, the board correctly held that claimant is precluded from relitigating whether his later-diagnosed labral tear is work-related.

Affirmed.