Argued and submitted September 28, 1998, affirmed May 12, 1999

SAIF CORPORATION
and K.F. Jacobsen & Company, Inc.,
*Petitioners,*

*v.*

John REID
and Department of Consumer and Business Services
and Caremark Comp.,
*Respondents.*

(WCB H96-148, H 96-149; CA A97497)

982 P2d 14

Julene Quinn argued the cause for petitioners. On the brief was Michael O. Whitty.

John M. Oswald argued the cause for respondent John B. Reid. With him on the brief was Bottini, Bottini & Oswald, P.C.

Denise Fjordbeck, Assistant Attorney General, argued the cause for respondent Department of Consumer and Business Services. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Erika L. Hadlock, Assistant Attorney General.

Jerald P. Keene waived appearance for respondent Caremark Comp.

Before Landau, Presiding Judge, and Wollheim, Judge, and Rossman, Senior Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

SAIF seeks review of a final order on reconsideration from the Department of Consumer and Business Services (DCBS). DCBS held that SAIF was required to pay for psychological services that claimant received outside a certified managed care organization (MCO) during the time SAIF *de facto* denied the psychological condition claim. We review for errors of law, ORS 183.482(8)(a) and ORS 656.298(6), and affirm.

The facts are not disputed. Claimant sustained an injury in January 1992 when he fell approximately 40 feet. SAIF accepted various physical conditions in March 1992. SAIF knew, as early as May 1993, that claimant was making a claim for a psychological condition, but SAIF did not accept claimant's psychological condition until October 1995. SAIF enrolled claimant in an MCO and claimant received medical services for his accepted *physical* conditions from the MCO. However, for the *psychological* condition that SAIF had neither accepted nor denied, claimant received treatment outside the MCO. After SAIF accepted the psychological condition, it refused to pay for the prior psychological services because they were provided outside the MCO. Relying on ORS 656.245(4)(b)(D), DCBS concluded that SAIF was required to pay for the disputed medical services. SAIF argues that the statute only applies to initial claims and aggravation claims. We disagree and affirm.

When an insurer contracts with a certified MCO, the insurer can require an injured worker to receive all compensable medical treatment from the MCO. ORS 656.245(4)(a). For "initial or aggravation claims" an insurer can require an injured worker to immediately receive all medical treatment from the MCO. ORS 656.245(4)(b)(A). However, if the insurer gives notice to the worker that all treatment must be received from the MCO, then the insurer must guarantee that all reasonable and necessary medical treatment will be paid even if the claim is subsequently denied. If the claim is denied, the worker may receive medical treatment outside the MCO until the denial is reversed. On reversal, the insurer is responsible for payment of medical services

received outside the MCO for the time the claim was denied. ORS 656.245(4)(b)(D).

SAIF argues that ORS 656.245(4)(b)(D) does not apply here because claimant's psychological condition claim was neither an "initial" claim nor an "aggravation" claim. DCBS interpreted ORS 656.245(4)(b)(D) to include claims for new medical conditions like the one at issue here. We review to determine whether DCBS's interpretation was correct.

ORS 656.003 provides that, "Except where the context otherwise requires, the definitions given in this chapter govern its construction." A claim is defined as "a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge." ORS 656.005(6). We have held that "claim" is an inexact statutory term that can mean something different from the definition contained in ORS 656.005(6). *Altamirano v. Woodburn Nursery, Inc.*, 133 Or App 16, 21, 889 P2d 1305 (1995). The issue in *Altamirano* was whether a *claim* under ORS 656.005(12)(b)(B) (1993)[1] carried the same meaning as the ORS 656.005(6) definition. We determined that if the definition of a claim in ORS 656.005(6) was applied to under ORS 656.005(12)(b)(B) (1993), the time limit for chiropractic treatment would be illusory. Accordingly, we held that the legislature did not intend for the statutory definition to apply to the word "claim" in ORS 656.005(12)(b)(B) (1993). *Id.* at 22-23.

We recently discussed the meaning of the term "claim" in *Johansen v. SAIF*, 158 Or App 672, 976 P2d 84 (1999). There, the issue was whether an insurer was required to pay interim compensation on a new medical condition claim under ORS 656.262(7). We held that "[a] new medical condition (1) arises after acceptance of an initial claim, (2) is related to an initial claim, and (3) involves a condition other than the condition initially accepted." *Id.* at 679. We identified three different types of claims: (1) initial claims; (2) new medical condition claims; and (3) aggravation claims.[2] *Id.* at

[1] ORS 656.005(12)(b)(B) (1993) provided that a chiropractor can be the attending physician on the *claim* for a period of 30 days or 12 visits.

[2] There may be other claims as well, such as an own motion claim, ORS 656.278, or a claim for a condition that was omitted from the notice of acceptance, ORS 656.262(6)(d).

679-80. We recognized that a new medical condition claim was one that related to the initial accepted claim. We noted, however, that a new medical condition claim is distinct from an aggravation claim because different requirements existed for each.[3] Ultimately, we held that a new medical condition claim requires processing under ORS 656.262 because "a new medical condition claim, although distinct from an initial claim or an aggravation claim, is nonetheless a claim." *Id.* at 680.

■        With this understanding in mind, we turn to the text of ORS 656.245. An insurer is required to provide "medical services for such conditions caused in material part by the compensable injury for such period as the nature of the injury or the process of the recovery requires * * *." ORS 656.245(1)(a). The duty to provide these medical services continues for the life of the worker. ORS 656.245(1)(b). Generally, an injured worker may choose to treat with any physician. ORS 656.245(2)(a). Again, an insurer that has contracted with an MCO may require an injured worker to receive medical treatment for the accepted claim solely from the MCO medical providers. ORS 656.245(4)(a). The dispute here concerns ORS 656.245(4), which provides, in part:

> "(b)(A)   For *initial or aggravation claims* filed after June 7, 1995, the insurer or self-insured employer may require an injured worker, on a case by case basis, immediately to receive medical services from the managed care organization.

> "(B)   If the insurer or self-insured employer gives notice that the worker is required to receive treatment from the managed care organization, the insurer or self-insured employer must guarantee that any reasonable and necessary services so received * * * will be paid as provided in ORS 656.248, even if the claim is denied * * *.

> "(C)   If the insurer or self-insured employer does not give notice that the worker is required to receive treatment

---

[3] For example, a new medical condition claim can be made at any time while an aggravation claim must be made within five years from the first closure of the claim. Additionally, to establish an aggravation claim the injured worker must establish an actual worsening of the compensable condition. There is no similar requirement for a new medical condition claim.

from the managed care organization, the insurer or self-insured employer is under no obligation to pay for services received by the worker unless the claim is later accepted.

"(D) If the *claim* is denied, the worker may receive medical services after the date of the denial from sources other than the managed care organization until the denial is reversed. Reasonable and necessary medical services received from sources other than the managed care organization after the date of *claim* denial must be paid as provided in ORS 656.248 by the insurer or self-insured employer if the *claim* is finally determined to be compensable." (Emphasis added.)

SAIF argues that ORS 656.245(4)(b)(D) does not apply here because subsection (4)(b) only applies to "initial or aggravation claims" and claimant's claim is neither. However, in subparagraph (4)(b)(D), the legislature did not similarly limit its language. Subparagraph (4)(b)(D) refers simply to "the claim," not the "initial or aggravation claim." The legislature's "use of a term in one section and not in another section of the same statute indicates a purposeful omission." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). *See also Dale v. Electrical Board*, 109 Or App 613, 616, 820 P2d 868 (1991) ("When the legislature uses different language in similar statutory provisions, it is presumed to have intended different meanings.").

Taken to its analytical inevitability, SAIF's position means that claimant would only be required to treat with the MCO for either "initial or aggravation claims." Since the psychological claim here is neither an initial nor an aggravation claim, claimant would never be required to treat with the MCO for his psychological condition. We do not believe the legislature intended such a result, because it would render the requirement to treat with a MCO illusory for certain types of claims. Rather, we believe that the legislature intended ORS 656.245(4) to apply to all types of claims, including new medical condition claims or claims seeking acceptance of a condition omitted from the notice of acceptance. This approach is consistent with our decision in *Johansen,* where we held that a new medical condition claim under ORS 656.262(7)(a) must be treated like any other claim. 158 Or App 680. We therefore conclude that the term

"claim" in ORS 656.245(4)(a)(D) applies to any type of claim and not just to initial or aggravation claims.

■     SAIF's final assignment of error is that even if ORS 656.245(4)(b)(D) applies, it still should not be required to pay for claimant's psychological treatment because DCBS failed to apply OAR 436-010-0230(3)(a), which provides:

> "Ancillary services including, but not limited to, physical therapy or occupational therapy by a medical service provider other than the attending physician shall not be reimbursed unless carried out under a written plan prescribed prior to the commencement of treatment and approved by the attending physician within seven days of the beginning of treatment."

SAIF argues that (1) claimant's psychological treatment qualifies as an ancillary service and (2) no treatment plan was filed prior to claimant beginning psychological treatment.

■     DCBS rejected SAIF's argument:

> "As discussed above, when a worker's claim is denied, either with a full claim denial or partial denial, the worker is not within the workers' compensation system for that portion of the claim. It is not until the claim, or claim for a specific condition, is accepted that the worker is within the workers' compensation system and subject to the workers' compensation laws. Therefore, the ancillary treatment rule would not apply until the denied condition was accepted."

We are bound by DCBS's interpretation of its own rule unless that interpretation is "inconsistent with the wording of the rule itself, or the rule's context, or with any other source of law." *Don't Waste Oregon Com. v. Energy Facility Siting,* 320 Or 132, 142, 881 P2d 119 (1994). For example, we affirmed DCBS's interpretation of its rule concerning reimbursing an injured worker for travel expenses because we concluded that DCBS's interpretation was plausible. *Safeway Stores, Inc. v. Cornell,* 148 Or App 107, 111, 939 P2d 99 (1997). We likewise hold that DCBS' interpretation of OAR 436-010-0230(3)(a) is plausible.

     Affirmed.