Submitted on record and briefs October 5, 2001, reversed August 28, 2002

In the Matter of
the Medical Services Dispute of
Francis St. Clair, Claimant.

## SAIF CORPORATION
and LL Smith Trucking Co.,
*Petitioners,*

*v.*

## Jens JENSEN, DC,
and Department of Consumer and Business Services,
*Respondents.*

H00-026; A113528

52 P3d 1118

Jerome P. Larkin filed the briefs for petitioners.

Jens Ole Jensen, D.C., IDE, QME, filed the brief *pro se*.

Richard Wasserman, Assistant Attorney General, waived appearance for respondent Department of Consumer and Business Services.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

SAIF seeks review of a final order of the Department of Consumer and Business Services (DCBS) that ordered SAIF to pay for medical services provided by Jens Jensen, D.C. We review for errors of law, ORS 183.482(8)(a), and reverse.

The facts are not disputed. Claimant, a commercial truck driver, suffered injuries to his neck and back as the result of a traffic accident in December 1997. He subsequently filed a claim with SAIF. Between February 20, 1998, and August 1999, claimant, who resides in California, received chiropractic treatment from Jensen in California. Meanwhile, in March 1998, SAIF denied the claim on the ground that claimant was entitled to benefits under California's workers' compensation law, not Oregon's law. On May 27, 1999, the Workers' Compensation Board ordered SAIF to accept the claim.

On July 2, 1999, SAIF notified claimant and Jensen that Jensen did not qualify as an attending physician beyond 30 days from the initial visit and instructed claimant to change attending physicians. Relying on ORS 656.245(2)(b)(A), SAIF paid Jensen only for those treatments delivered during the 30 days from the initial visit on February 20, 1998. Jensen requested assistance from the Workers' Compensation Division (WCD) in collecting payment.

The Medical Review Unit issued an administrative order holding SAIF responsible for medical services through July 2, 1999. SAIF requested a hearing before the WCD. Relying on *SAIF v. Reid*, 160 Or App 383, 982 P2d 14 (1999), the hearing officer held that ORS 656.245(2)(b)(A) did not apply to claims that had been denied, and therefore, Jensen was entitled to be paid for medical services from February 1998 to July 2, 1999. In the alternative, the hearing officer held that SAIF was liable for medical services provided before July 2, 1999, based on the doctrine of equitable estoppel. DCBS adopted and affirmed the hearing officer's opinion.

On review, SAIF assigns error to DCBS's order that SAIF was liable for medical services provided by Jensen after March 21, 1998. Specifically, SAIF argues that DCBS misconstrued ORS 656.245 and misapplied our holding in *Reid* when it held that ORS 656.245(2)(b)(A) was inapplicable to claims in denied status. Additionally, SAIF argues that DCBS erred in holding that SAIF was equitably estopped from refusing to pay for the medical services provided by Jensen before July 2, 1999.

■ In determining the meaning of ORS 656.245, we are guided by the methodology described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). The goal is to determine the legislature's intent. At the first level we examine the statute's text in context. If the text in context is unambiguous, further inquiry is unnecessary. *Id.* at 611.

■ We start with ORS 656.245(1)(a), which provides that an injured worker with a compensable injury is entitled to receive, and an insurer is required to provide, medical services for the life of the injured worker for conditions caused in material part by the compensable injury.[1] The parties do not dispute the meaning of subsection (1)(a). ORS 656.245(2) provides, in part:

"(a) The worker may choose an attending doctor or physician * * * in another country or in any state or territory or possession of the United States with the prior approval of the insurer or self-insured employer.

"(b) A medical service provider who is not a member of a managed care organization is subject to the following provisions:

"(A) A medical service provider who is not qualified to be an attending physician may provide compensable medical service to an injured worker for a period of 30 days from the date of injury or occupational disease or for 12 visits, whichever first occurs, without the authorization of an attending physician. Thereafter, medical service provided to an injured worker without the written authorization of an attending physician is not compensable."

---

[1] A different standard, major contributing cause, applies to consequential and combined conditions. ORS 656.245(1)(a).

An attending physician is defined in ORS 656.005(12)(b):

> "Except as otherwise provided for workers subject to a managed care contract, 'attending physician' means a doctor or physician who is primarily responsible for the treatment of a worker's compensable injury and who is:
>
> "* * * * *
>
> "(B)   For a period of 30 days from the date of first visit on the initial claim or for 12 visits, whichever first occurs, a doctor or physician licensed by the State Board of Chiropractic Examiners for the State of Oregon or a similarly licensed doctor or physician in any country or in any state, territory or possession of the United States."

Here, DCBS's interpretation inserted a condition into ORS 656.245(2)(b)(A) that the 30-day or 12-visit limitation was applicable only to accepted claims. We disagree.

ORS 656.245 describes what medical services will be compensable, without regard to whether the claim has been accepted at the time of the medical service. There is no language that qualifies the 30-day or 12-visit limit for nonattending physicians set out in ORS 656.245(2)(b)(A) based on the status of the claim, and we are prohibited from inserting language into that statute. ORS 174.010.

The meanings of ORS 656.245 and ORS 656.005(12)(b) are plain. A chiropractor who is not a member of a managed care organization can be an attending physician only for 30 days from the date of first treatment or 12 visits, whichever first occurs. Jensen did not qualify as an attending physician after the time limits set out above.

Despite the plain language of the statute, DCBS held that it was bound by our holding in *Reid*, which, according to DCBS, stands for the proposition that the limit set out in ORS 656.245(2)(b)(A) does not apply if a claim is denied. We disagree with DCBS's interpretation of *Reid*.

*Reid* required us to interpret the word "claim" in ORS 656.245(4)(b)(D).[2] The claimant in *Reid* was injured in a

---

[2] ORS 656.245(4) provides, in part:

"Notwithstanding subsection (2)(a) of this section, when a self-insured employer or the insurer of an employer contracts with a managed care

compensable accident. SAIF accepted various physical conditions and enrolled the claimant in a managed care organization to receive treatment for his accepted physical conditions. Later, the claimant filed a new medical condition claim for a psychological condition, which SAIF neither accepted nor denied. Before SAIF's eventual acceptance of the new medical condition, the claimant received psychological services outside the managed care organization. After acceptance, SAIF refused to pay for previous psychological services because those services were provided outside the managed care organization. *Reid,* 160 Or App at 385. According to SAIF, ORS 656.245(4)(b)(D) was limited to initial or aggravation claims. We rejected SAIF's limiting construction of ORS 656.245(4)(b)(D) and held that the ability of an injured worker to seek treatment outside of a managed care organization applied to all claim denials, including claims for new medical conditions. We did not discuss any question concerning the payment to a chiropractor when the chiropractor no longer qualifies as an attending physician.

In this case, DCBS seized upon language in *Reid* regarding DCBS's interpretation of OAR 436-010-0230(3)(a) (1998).[3] *Id.* at 389. In *Reid,* we quoted DCBS's reasoning that "[i]t is not until the claim, or claim for a specific condition, is accepted that the worker is within the workers' compensation system and subject to the workers' compensation laws.

organization * * * for medical services required by this chapter to be provided to injured workers:

"(a) Those workers who are subject to the contract shall receive medical services in the manner prescribed in the contract.

"(b) * * *

"* * * * *

"(D) If the claim is denied, the worker may receive medical services after the date of denial from sources other than the managed care organization until the denial is reversed. Reasonable and necessary medical services received from sources other than the managed care organization after the date of claim denial must be paid * * * by the insurer or self-insured employer if the claim is finally determined to be compensable."

[3] OAR 436-010-0230(3)(a) (1998) provided:

"Ancillary services including, but not limited to, physical therapy or occupational therapy by a medical service provider other than the attending physician shall not be reimbursed unless carried out under a written plan prescribed prior to the commencement of treatment and approved by the attending physician within seven days of the beginning of treatment."

Therefore, the ancillary treatment rule would not apply until the denied condition was accepted." *Id.* Applying the deferential review standard of *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 881 P2d 119 (1994), we held that DCBS's interpretation of its own rule, OAR 436-010-0230(3)(a) (1998), that that rule does not apply to denied claims, was "plausible" and, thus, must be sustained. In so holding, we addressed only the question raised by the assignment of error—the plausibility of DCBS's interpretation of its own rule—and did not purport to construe ORS 656.245(2)(b)(A). Thus, we reject DCBS' application of *Reid* to this case to the extent that DCBS interpreted *Reid* as barring the application of the 30-day or 12-visit limit in ORS 656.245(2)(b)(A) to denied claims.

■    DCBS alternatively held that SAIF was equitably estopped from denying payment to Jensen for services provided before July 2, 1999. The holding was based on three letters sent by SAIF to Jensen before the July 2, 1999, notification letter. Each letter requested more information from Jensen, specifically chart notes, for billings of past medical services previously mailed to SAIF from Jensen. DCBS found as follows:

> "In this case, insurer had repeated notice that claimant was receiving chiropractic treatment from [Jensen]. In addition, during the same period of time, insurer repeatedly notified [Jensen] that the bills were being denied because the claim was denied or in litigation. Thus, the insurer through its actions *represented that [Jensen's] bills would be paid if the claim were eventually accepted.* It is clear from the record that insurer knew [claimant's] treatment was being provided and directed by a chiropractor. Because insurer made affirmative representations to [Jensen] about the grounds for its disapproval of his treatment, it also had an affirmative obligation to make an inquiry regarding his credentials as an attending physician if it intended to later assert a lack of those credentials as a defense. Thus, [Jensen's] belief that insurer would reimburse him if the underlying claim was accepted was reasonable given the insurer's representations as to their grounds for non-payment. Therefore, SAIF's representations coupled with [Jensen's] continued treatment in reliance on those representations satisfy the requirements of equitable estoppel." (Emphasis added.)

On review, SAIF argues that the doctrine of equitable estoppel was inapplicable to this case. Specifically, SAIF argues that there was no evidence in the record that it ever "represented that [Jensen's] bills would be paid if the claim were eventually accepted." Additionally, SAIF argues that there is no notice requirement provided in ORS 656.245(2) and that DCBS effectively wrote a notice requirement into the statute.

■ The doctrine of equitable estoppel may preclude a person

> " 'by his act or conduct, or silence when it was his duty to speak, *from asserting a right* which he otherwise would have had. The doctrine of estoppel is only intended to protect those who materially change their position in reliance upon another's acts or representations.' " *Meier & Frank Co. v. Smith-Sanders*, 115 Or App 159, 163, 836 P2d 1359, *rev den* 316 Or 142 (1993) (quoting *Stovall v. Sally Salmon Seafood*, 306 Or 25, 34, 757 P2d 410 (1988) (emphasis in original; internal citations omitted).

Here, the letters from SAIF may have reasonably led Jensen to believe that SAIF would pay for the medical services if the claim was accepted. However, Jensen did not materially change his position in reliance upon SAIF's letters. Each letter sent by SAIF was in response to a request for payment by Jensen for *past* medical services. Neither Jensen nor claimant ever requested authorization for continued or future treatment and none of the letters offered such authorization. *Cf. Meier & Frank Co.*, 115 Or App at 163 (insurer estopped from denying payment for knee surgery where the insurer had expressly authorized the doctor to proceed with the surgery).

■■ Jensen also cannot assert that he relied on SAIF's silence when he continued providing medical services after the 30-day period. Silence may be grounds for equitable estoppel only when there is a duty to speak. *Id.* Because ORS 656.245(2) does not contain a notification requirement, SAIF did not have a duty to inform Jensen of the statutory requirements of ORS 656.245(2)(b)(A) and ORS

656.005(12)(b), and its silence cannot provide the basis for equitable estoppel.[4] Therefore, DCBS erred when it held that SAIF was equitably estopped from denying payment to Jensen for medical services.

Reversed.

---

[4] It may be, as Jensen argued, "fundamentally unfair" to deny payment for medical services under these circumstances. However, it is not our task to decide workers' compensation cases based on concepts of "fundamental fairness" that do not state a constitutional basis. That task is better left to another branch of government.