Argued and submitted February 24, reversed and remanded December 9, 2009

In the Matter of the Compensation of
William D. O'Connor, Claimant.

William D. O'CONNOR,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and ServiceMaster,
*Respondents.*

Workers' Compensation Board
0606536; A137060

222 P3d 1097

Robert F. Webber argued the cause for petitioner. With him on the briefs were Arthur W. Stevens III and Black, Chapman, Webber, Stevens, Petersen & Lundblade.

David O. Wilson argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Claimant seeks review of an order of the Workers' Compensation Board (board) upholding a permanent partial disability (PPD) award for claimant's accepted wrist injury that did not include an award for loss of range of motion. Claimant contends that the board erred in not awarding benefits for the loss of range of motion for his wrists based on findings made by a medical arbiter under OAR 436-035-0007(12). We review the board's order to determine whether it is supported by substantial evidence in the whole record, ORS 183.482(8)(a), and whether the board's order is consistent with applicable rules, ORS 183.482(8)(b). On the basis of that review, we reverse and remand.

The administrative law judge (ALJ) found the following facts, which were adopted by the board:

"Claimant is a 62 year-old janitor who began working for employer's janitorial service in 1986. In that job, claimant regularly used vibrating equipment to clean floors. In 2002, claimant sought treatment for pain and numbness in his hands and was diagnosed with bilateral carpal tunnel syndrome (CTS). The employer issued an acceptance of this condition as an occupational disease in May 2004.

"Dr. Worland, M.D., performed left and right carpal tunnel releases in May and June 2004, respectively. Claimant continued to experience significant bilateral CTS symptoms. * * * In September 2005, Dr. Worland performed a repeat left carpal tunnel release, and his operative findings included significant compression with active tenosynovitis about the median nerve. Claimant experienced some relief from numbness following the repeat surgeries, but he continued to experience significant bilateral hand pain.

"On January 20, 2006, Dr. Worland reported that claimant had normal range of motion in all joints. On March 24, Dr. Worland concurred with the closing examination findings of Dr. Melson, M.D., who evaluated claimant on February 21, 2006. Dr. Melson reported the following range of motion and expressly opined that these measurements were valid: radial deviation of 10 degree right and left; ulnar deviation of 20 degrees right and 40 degrees left, dorsiflexion of 40 degrees right and 45 degrees left; and palmar flexion of 25 degrees right and 40 degrees left. Dr. Melson

also opined that claimant might experience some further recovery in his hands over time.

"On April 21, 2006, the insurer closed claimant's injury claim with an award of 18 percent permanent partial disability (PPD) of the right wrist and 15 percent PPD of the left wrist. The closure award included impairment values for the reduced motion reported by Dr. Melson.

"Claimant requested reconsideration of the closure award, and Dr. Gallagher, orthopedic surgeon, performed an arbiter examination on August 24, 2006. Dr. Gallagher reported the following range of motion for claimant's wrists: radial and ulnar deviation of 10 degrees right and left; dorsiflexion of 30 degrees right and 20 degrees left; and palmar flexion of 12 degrees right and 15 degrees left. Dr. Gallagher noted his reservations regarding the validity of these range of motion measurements.

"On September 11, 2006, the Department issued an Order on Reconsideration (OOR) that reduced the PPD award for claimant's right forearm (wrist) from 18 percent to 15 percent, and reduced the PPD for the left forearm (wrist) from 15 percent to 14 percent. The OOR award was based on the arbiter's examination findings and *did not include an award for range of motion because of the arbiter's reservations regarding the validity of those measurements*."

(Emphasis added.)

Gallagher's report included two statements about the range of motion findings. Gallagher reported as follows:

"* * * It is to be noted that motion in both wrists is markedly abnormal and much more so than noted on previous examinations in the medical record. I cannot say with any medical probability whether the motion is valid or not. It is, in my opinion, much more restricted than I would expect following two carpal tunnel surgeries on each hand.

"* * * * *

"I think the findings on sensation examination are valid but as stated previously, I cannot say within any medical probability that the abnormal wrist motion findings are valid."

The issue in this case concerns the legal effect to be given to Gallagher's range of motion findings, given his

equivocation on their validity or invalidity. OAR 436-035-0007, an administrative regulation of the Department of Consumer and Business Services, Workers' Compensation Division, sets out policies to be used by the department and the board in rating permanent disabilities under the Workers' Compensation Act. A subsection of that rule, OAR 436-035-0007(12), requires that findings of impairment by an evaluating physician be used "unless the physician determines the findings are invalid and provides a written opinion, based on sound medical principles, explaining why the findings are invalid." Another subsection of the rule states that, when a rating is reconsidered through use of a medical arbiter, that "impairment is established based on objective findings of the medical arbiter, except where a preponderance of the medical evidence demonstrates that different findings by the attending physician are more accurate and should be used." OAR 436-035-0007(5). The application of those parts of the rule controls the legal effect to be given to Gallagher's findings.

Claimant sought review of the failure of the department to award a greater percentage of PPD based on his loss of range of motion. Before the ALJ, claimant argued that he is entitled to an additional impairment value for the reduced range of motion reported in Gallagher's medical arbiter report or, in the alternative, that he is entitled to an impairment value for the reduced wrist range of motion found by Melson.[1] The ALJ held that "the record does not support an impairment value based on the arbiter's range of motion measurements. However, claimant is entitled to an impairment value based on Dr. Melson's range of motion measurements." The ALJ reasoned that, although the medical arbiter did not expressly find that the range of motion findings were invalid, "that conclusion is implicit in his opinion," and, therefore, a preponderance of the evidence demonstrated

---

[1] Although Melson is not claimant's attending physician, his findings may be used to determine impairment under OAR 436-035-0007(6), which provides:

"Objective findings made by a consulting physician or other medical providers (e.g. occupational or physical therapists) at the time of closure may be used to determine impairment if the worker's attending physician concurs with the findings as prescribed in OAR 436-010-0280."

that the attending physician's findings were more accurate and should be used.

Claimant appealed that order, seeking an additional award for loss of range of motion based on Gallagher's findings instead of Melson's. The board agreed with the ALJ that "Gallagher's explanation regarding the invalidity of the [range of motion] findings meets the requirements of OAR 436-035-0007(12), as it is a written opinion based on sound medical principles," and concluded that "it establishes that [Gallagher] considered the wrist [range of motion] findings to be invalid." Accordingly, the board held that claimant is not entitled to a PPD award for range of motion based on Gallagher's findings. Furthermore, the board held that, in the alternative, even if Gallagher's report did not clearly establish that his findings were invalid, the board would reach the same result under OAR 436-035-0007(5).

The board examined other medical evidence of claimant's range of motion and concluded that, even considering Gallagher's findings, the record does not support a finding that claimant had permanent impairment of his wrist range of motion. The board stated that, "assuming that Dr. Gallagher's * * * findings are ambiguous, claimant's [range of motion] impairment may be established only by Dr. Worland." Worland, claimant's attending physician, initially reported that claimant's "range of motion of all joints is entirely normal." Based on Worland's finding, the board concluded, in the alternative, that claimant had no range of motion impairment and was not entitled to a PPD award based, in part, on any loss of range of motion. Despite that conclusion, the board affirmed the ALJ's award of PPD, which was based, in part, on a loss of range of motion in claimant's wrists.

On review, claimant argues only that the board erred in concluding that Gallagher's findings were invalid. He contends that Gallagher's report states only that he could not determine whether the findings were valid or invalid and that, therefore, the findings should have been rated under OAR 436-035-0007(12). Employer argues that "any reasonable person" would find Gallagher's report to be substantial evidence that Gallagher considered claimant's range of

motion findings invalid for rating impairment. ORS 183.482(8)(c), governing this court's standard of review in administrative proceedings, directs us to set aside or remand the order if we find "that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." We review the board's interpretation of a medical report under that standard. *See SAIF v. Strubel*, 161 Or App 516, 522, 984 P2d 903 (1999) ("[G]iven the context of [the doctor's] opinion and the record as a whole, it was reasonable for the Board to interpret [the doctor's] use of the word 'symptoms' to mean claimant's current condition and need for treatment. Accordingly, the Board did not err in concluding that claimant's combined condition was compensable."). We also review the board's application of OAR 436-035-0007 to determine if its action was "inconsistent with [that] rule" under ORS 183.482(8)(b)(B).

We begin the analysis with the text of the relevant portions of OAR 436-035-0007:

"(5)   Impairment is established based on objective findings of the attending physician under ORS 656.245(2)(b)(B) and OAR 436-010-0280. On reconsideration, where a medical arbiter is used, impairment is established based on objective findings of the medical arbiter, *except where a preponderance of the medical evidence demonstrates that different findings by the attending physician are more accurate and should be used.*

"(6)   Objective findings made by a consulting physician or other medical providers * * * at the time of closure may be used to determine impairment if the worker's attending physician concurs with the findings as prescribed in OAR 436-010-0280.[2]

---

[2] OAR 436-010-0280 provides, in relevant part:

"(1) On disabling claims, when the worker becomes medically stationary, the attending physician must complete a closing exam or refer the worker to a consulting physician for all or part of the closing exam. * * *

"(2) The attending physician or authorized nurse practitioner has 14 days from the medically stationary date to send the closing report to the insurer. Within eight days of the medically stationary date, the attending physician may arrange a closing exam with a consulting physician. This exam does not count as an IME or a change of attending physician.

"* * * * *

"(12)    Validity is established for findings of impairment according to the criteria noted in the *AMA Guides to the Evaluation of Permanent Impairment, 3rd Ed., Rev., 1990,* unless the validity criteria for a particular finding is not addressed in this reference, is not pertinent to these rules, or is determined by physician opinion to be medically inappropriate for a particular worker. *Upon examination, findings of impairment which are determined to be ratable under these rules are rated unless the physician determines the findings are invalid and provides a written opinion, based on sound medical principles, explaining why the findings are invalid.* When findings are determined invalid, the findings receive a value of zero. If the validity criteria are not met but the physician determines the findings are valid, the physician must provide a written rationale, based on sound medical principles, explaining why the findings are valid. * * *"

(Emphasis added.)

■        Read together, those parts of OAR 436-035-0007 require that, on reconsideration, the impairment must be based on the medical arbiter's objective findings. There are two exceptions: (1) where the medical arbiter states that those findings are invalid; or (2) where a preponderance of the evidence demonstrates that different findings are more accurate. If a preponderance of the medical evidence shows that the attending physician's findings are more accurate, then the impairment is rated based on those findings or on closure findings made by a consulting physician if the attending physician concurs in those findings.[3]

After reporting his findings, Gallagher declared that the tested range of motion was "markedly abnormal and much more so than noted on previous examinations" and

---

"(3) When an attending physician requests a consulting physician to do the closing exam, the consulting physician has seven days from the date of the exam to send the report for the concurrence or objections of the attending physician. The attending physician must also state, in writing, whether they agree or disagree with all or part of the findings of the exam. * * *"

[3] We emphasize that OAR 436-035-0007(12) does not require a finding by the medical arbiter that the findings are *valid.* The findings are to be rated unless the medical arbiter determines that they are invalid or the evidence indicates otherwise.

"much more restricted than I would expect" so that he could not "say with any medical probability whether the motion is valid or not." Gallagher also stated that "I cannot say within any medical probability that the abnormal wrist motion findings are valid."

Those statements, on their face, indicate that Gallagher did not and could not determine whether the findings were valid, not that Gallagher had in fact made a determination that the findings were invalid. OAR 436-035-0007(12) directs that findings are to be rated "unless the physician *determines the findings are invalid* and provides a written opinion, based on sound medical principles, explaining why the findings are invalid." (Emphasis added.) However, the board rejected claimant's argument that, "because Dr. Gallagher did not clearly declare the [range of motion] findings invalid but only questioned their validity, the findings should be considered valid," and concluded that, "viewing Dr. Gallagher's opinion as a whole, * * * it establishes that he considered the wrist [range of motion] findings invalid."

■ We do not think that the report as a whole can be reasonably interpreted that way. Although not dispositive, the fact that Gallagher's report lacks any assertion of *invalidity* is significant. We acknowledge that not every medical report uses the precise words and phrases employed in the workers' compensation statutes and rules. *Strubel*, 161 Or App at 521 ("We have stated that an expert's opinion need not be ignored merely because it fails to include magic words." (Internal quotation marks omitted.)). But, even without the use of statutory verbiage, there must be some express text in a report that demonstrates compliance with statutory or rule requirements. In *Strubel,* we said that, although a medical expert must take into account certain factors to determine their relative weight, a doctor's statement that appeared to avoid that required evaluation would suffice where the context of the statement permitted the board to conclude that the doctor "understood the necessary analysis and applied it properly." *Id.* Under that reasoning, it may be possible for a medical arbiter report as a whole to constitute a determination of invalidity under OAR 436-035-0007(12) even if the doctor does not explicitly state that the findings are "invalid."

However, the record does not support that conclusion in this case. The board relied on Gallagher's discussion of the medical principles that were his reasons for questioning validity and cited a case related to the validity of medical arbiter findings, *Sherry M. Bouris,* 59 Van Natta 297 (2007). In that case, the claimant argued that the medical arbiter's opinion explaining invalidity was not based on sound medical principles. The arbiter had reported that "[t]he cervical ranges of motion as measured by me, I would consider invalid since they are considerably less than that measured by [another doctor] and I would expect [range of motion] to get better with time, not worse." *Id.* at 299. There, the board concluded that the arbiter's explanation was sufficient. In its order on review, the board stated that "the circumstances here [are] similar to those in *Bouris,*" such that "we agree with the ALJ that Dr. Gallagher's explanation regarding the invalidity of the [range of motion] findings meets the requirements of OAR 436-035-0007(12)." The Board considered Gallagher's explanation that the findings were "more restricted than I would expect following the two carpal tunnel surgeries" as evidence that Gallagher considered his findings invalid.

We disagree. Although the Board is correct that the reasoning in *Bouris* would support a conclusion that Gallagher's explanation of his findings is "based on sound medical principles," the reasoning in *Bouris* does not address the predicate issue: whether Gallagher in fact determined that his findings were invalid. The medical arbiter in *Bouris* clearly stated that the findings were invalid and went on to explain why. That doctor stated unequivocally as to the measured ranges of motion, "I would consider [them] invalid." Here, Gallagher did not state that his findings were invalid. He said, "I cannot say with any medical probability whether the findings were valid or *not*" and then explained why he had reservations about the findings. (Emphasis added.) That is, he could not make a determination about validity or invalidity. Explaining his reservations about the findings does not suffice to convert those reservations about validity to a determination of invalidity.

We note that, under OAR 436-035-0007(12), validity

"is established * * * according to the criteria noted in the *AMA Guides to the Evaluation of Permanent Impairment, 3rd Ed., Rev., 1990*, unless the validity criteria for a particular finding is not addressed in this reference, is not pertinent to these rules, or is determined by physician opinion to be medically inappropriate for a particular worker."

The same standards apply to a determination of invalidity. A medical examiner's opinion "explaining why the findings are invalid" necessarily must consider those standards. Gallagher's report did not provide the necessary explanation of a determination of invalidity. We are not persuaded that a reasonable person would construe the medical explanation as an indication that Gallagher had made a determination of invalidity, when the explanation appears alongside his explicit statement that he *could not* make that determination with any medical certainty and the discussion fails to evaluate the relevant criteria for invalidity. The board erred in concluding that Gallagher sufficiently determined that his findings were invalid.

■■ What remains is the board's alternative basis for its holding and the application of OAR 436-035-0007(5) and (6). The board determined that, if the medical arbiter's findings were not invalid, they were ambiguous, and so it turned *only* to Worland's findings to determine whether the range of motion of claimant's wrists was impaired. The board concluded that "Dr. Worland's opinion does not support a finding that claimant had permanent impairment from bilateral wrist [range of motion] loss," and, assuming Gallagher's findings are not used, "claimant would still not be entitled to an award of scheduled PPD" for range of motion loss. Nonetheless, the board *affirmed* the ALJ's order which had granted a PPD award based in part on bilateral wrist range of motion loss as measured by Melson and concurred in by Worland. Again, our standard of review of the board's determination is governed by the substantial evidence standard in ORS 183.482(8)(a) and by ORS 183.482(8)(b), which directs this court to "remand the order to the agency if the court finds the agency's exercise of discretion to be * * * [i]nconsistent with an agency rule." As we restated in *Cummings v. SAIF*, 197 Or App 312, 319, 105 P3d 875 (2005), to meet the substantial evidence requirement, "the board's opinion must include a

sufficient explanation to allow a reviewing court to examine the agency's action," *i.e.*, it must be supported by substantial reason. (Internal quotation marks omitted.)

The board's statement that, "assuming that Dr. Gallagher's * * * findings are ambiguous, claimant's [range of motion] impairment may be established *only* by Dr. Worland" (emphasis added) is inconsistent with OAR 436-010-0280, which allows a consulting physician's findings to be used where, as here, the attending physician concurred with those findings in full and in writing. That inconsistency requires remand under ORS 183.482(8)(b).

**9, 10.** In addition, we hold that the board's order is not supported by substantial reason. An order that is supported by "substantial reason" contains a sufficient explanation that "clearly and precisely state[s] what [the board] found to be the facts and fully explain[s] why those facts lead it to the decision it makes." *Home Plate, Inc. v. OLCC*, 20 Or App 188, 190, 530 P2d 862 (1975); *see also Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982) ("It is essential that an agency articulate in a contested case the rational connection between the facts and the legal conclusion it draws from them."). Here, the board's rationale, as articulated in its order, is that Gallagher's findings are either invalid or ambiguous and that, in either circumstance, "claimant would still not be entitled to an award of scheduled PPD for [range of motion] loss in his bilateral wrists." However, the board then affirmed the ALJ's award for PPD that was based in part on the loss of range of motion in claimant's wrists. Because the board's order does not clearly explain its decision or demonstrate the rational connection between its analysis and the outcome of the case, it is not supported by "substantial reason." We remand to allow the board to reconsider its alternative conclusion and better explain itself in light of the Gallagher and Melson findings.

Reversed and remanded.