Argued and submitted March 14, affirmed on petition and on cross-petition August 21, 2013

In the Matter of the Compensation of
Darlene L. Sparling, Claimant.

Darlene L. SPARLING,
*Petitioner*
*Cross-Respondent,*

*v.*

PROVIDENCE HEALTH SYSTEM OREGON,
*Respondent*
*Cross-Petitioner.*

Workers' Compensation Board
1000269; A148031

308 P3d 1103

Christopher D. Moore argued the cause for petitioner-cross-respondent. With him on the briefs was Moore, Jensen & Lesh.

Theodore P. Heus argued the cause for respondent-cross-petitioner. With him on the briefs was Scheminske & Lyons, LLP.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Edmonds, Senior Judge.

HADLOCK, J.

**HADLOCK, J.**

Claimant and employer both challenge an order of the Workers' Compensation Board awarding claimant temporary total disability (TTD) benefits as of January 14, 2010. Claimant contends that the board erred by declining to award her TTD benefits starting in either 2008 or 2009; employer argues that the board should not have awarded benefits starting even in 2010. We affirm on both claimant's petition and employer's cross-petition.

We describe the pertinent historical facts in accordance with the board's unchallenged factual findings. Claimant, who worked for employer as an x-ray technologist, suffered a compensable lumbar strain in April 2006 when she tried to prevent a patient from falling. She received treatment from Dr. Tsai, who eventually became her attending physician. Claimant's lumbar-strain claim was closed in November 2007 with no award of permanent disability benefits, although she did receive TTD benefits for some time.

In late 2007, Tsai reported that he was treating claimant for chronic lower back/sacral pain. Tsai (along with some other physicians who evaluated claimant's condition) diagnosed sacroiliitis, which is defined as "[i]nflammation of the sacroiliac joint." *Stedman's Medical Dictionary* 1587 (27th ed 2000). In February 2008, Tsai informed claimant's employer that he had been treating claimant for sacroiliitis and thought that she could only work four days per week; in March 2008, he recommended further work restrictions. Claimant filed an aggravation claim, which employer denied in March 2008; claimant stopped receiving TTD benefits at that time. In April 2008, Tsai sent a letter to claimant's attorney indicating that claimant had "chronic low back pain due to sacroiliitis" as well as a radiculopathy.

In May 2008, claimant consulted Dr. Movius, who diagnosed her with a sacroiliac and iliolumbar sprain or strain. As a result of those new diagnoses, claimant filed a post-acceptance claim for lumbar radiculopathy, sacroiliitis, and sacroiliac and iliolumbar ligament strain or sprain, which employer denied in late 2008.

In February 2009, Movius reported that claimant had injured her pelvic ligaments during on-the-job accidents. Movius also reported that claimant was "not able to return to the work for which she is trained." In Movius's opinion, claimant could sit, stand, or walk for a total of only 30 minutes each hour, with no more than three hours per day of sitting, standing, or walking combined. Movius did not think that sacroiliitis contributed significantly to claimant's pain. Claimant treated with Movius through August 2009.

In a July 2009 order and an October 2009 order on reconsideration, an administrative law judge (ALJ) upheld employer's 2008 denial of claimant's claims for radiculopathy and sacroiliitis, but set aside the denial of claimant's "sacroiliac and iliolumbar strain condition." Employer accepted the latter condition on October 22, 2009, and, on that same day, notified claimant that Movius was not qualified to serve as her attending physician.[1] The notice further informed claimant that it would not pay TTD benefits that were not authorized by a qualified attending physician or authorized nurse practitioner, and employer subsequently refused to pay TTD benefits.

Claimant requested and received a hearing, during which she argued that she was entitled to TTD benefits "with respect to her newly accepted claims for sacroiliac and iliolumbar strains." The ALJ rejected that argument, finding that "no attending physician [had] authorized temporary disability with respect to the compensable condition of sacroiliac and iliolumbar strain" and concluding, therefore, that employer had no "obligation to pay temporary disability benefits." More specifically, the ALJ rejected claimant's contention that she was entitled to TTD benefits starting either in April 2008 or in early 2010 (as purportedly authorized by Tsai) or starting in March 2009 (as purportedly authorized by Movius).

Claimant sought review before the board, which adopted the ALJ's factual findings but reversed his determination that claimant was not entitled to TTD benefits starting in 2010. As an initial matter, the board agreed with

---

[1] Movius was not a member of the managed care organization (MCO) through which employer required claimant to obtain treatment.

the ALJ that, although "Tsai had imposed work restrictions that included a four-day work week" by April 2008, he had not then attributed those restrictions to the accepted condition of sacroiliac and iliolumbar strain "because, at that point, he had not yet diagnosed that condition." Rather, Tsai "believed that claimant suffered from sacroiliitis," and his 2008 authorization for TTD benefits was only for that condition, which had been denied. The board rejected the suggestion that Tsai initially had misdiagnosed claimant, noting that, even after Tsai agreed in 2010 that claimant suffered a sacroiliac and iliolumbar strain, he "did not assert that his earlier 2008 authorization for the denied 'sacroiliitis' condition was a 'misdiagnosis' or that he intended that earlier authorization to be for the compensable 'sacroiliac/iliolumbar strain.'"

The board also agreed with the ALJ that claimant was not entitled to TTD benefits starting in 2009 based on Movius's authorization, as Movius was not claimant's attending physician:

"Only an 'attending physician' may authorize the payment of temporary disability compensation. An 'attending physician' is 'a doctor, physician, or physician assistant who is primarily responsible for the treatment of a worker's compensable injury.'

"Here, the record establishes that Dr. Tsai, not Dr. Movius, was 'primarily responsible for the treatment of [claimant's] compensable injury.'"

(Citations omitted; brackets in original.)

The board's analysis departed from the ALJ's, however, with respect to claimant's argument that she became entitled to TTD benefits starting in early 2010. By that point, the board determined, Tsai—still claimant's attending physician—had agreed that claimant was unable to return to work because of "severe impairment" associated with "the compensable sacroiliac and iliolumbar strain." The board found that Tsai's "changed opinion was based on the receipt of new information from Movius (consisting of many pages of medical evaluation and a physical capacity form) and a letter in which she opined that claimant's sacroiliac and iliolumbar condition would prevent her from returning to

her regular work." The board concluded that Tsai's concurrence with Movius's opinion "sufficiently authorized temporary disability beginning January 14, 2010," and, therefore, the board awarded claimant TTD benefits starting on that date. Both parties petitioned for judicial review.

On review, claimant first argues that the board erred in determining that she was not entitled to TTD benefits starting in April 2008. At that point, Tsai had imposed work restrictions that he said were related to claimant's sacroiliitis. Claimant acknowledges that "sacroiliitis was an unaccepted condition" and, therefore, that she would not be entitled to TTD benefits associated with that condition. Nonetheless, she asserts, "Tsai later identified [her] low back pain as a sacroiliac and iliolumbar strain." Because *those* conditions had been accepted, claimant argues, she was entitled to TTD benefits dating back to 2008, when Tsai first reported that she had only a limited ability to work. Claimant contends that the board misread Tsai's 2010 communications when it concluded that he was not retroactively authorizing TTD "for the compensable sacroiliac/iliolumbar strain." According to claimant, Tsai explained in 2010 "that his earlier statements regarding claimant's 'sacroiliitis' actually were directed toward claimant's compensable sacroiliitis/iliolumbar strain condition."

Employer responds that Tsai consistently opined that claimant suffered from both sacroiliitis and a sacroiliac and iliolumbar strain. Employer further asserts that the record supports the board's determination that Tsai's 2010 reports did not mean that his 2008 "temporary disability authorization * * * pertained to the [later] accepted iliolumbar or sacroiliac strain conditions."

We agree with employer that the record supports the board's interpretation of Tsai's 2010 reports. *See O'Connor v. Liberty Northwest Ins. Corp.*, 232 Or App 419, 425, 222 P3d 1097 (2009) (this court reviews "the board's interpretation of a medical report" for substantial evidence, *i.e.*, to determine whether "the record, viewed as a whole, would permit a reasonable person to make that finding"). In early 2008, Tsai repeatedly reported that he had been treating claimant for sacroiliitis, and he recommended work restrictions based

on that condition. In January 2010, after Movius had diagnosed a sacroiliac and iliolumbar strain, Tsai reported that he was prescribing claimant medications related to that strain condition. However, Tsai's other reports from early 2010 continue to distinguish sacroiliitis from the strain condition, noting that both of the conditions caused claimant pain. And, although Tsai stated that he sometimes had treated sacroiliitis and the strain condition "as being equivalent since they can be difficult to discern," he still asserted in 2010 that *both* conditions were contributing to claimant's pain, even though he found it "difficult to quantify the contributions of either condition."

In short, Tsai diagnosed claimant with sacroiliitis in 2008; two years later, based on Movius's evaluation of claimant, he asserted that claimant *also* had a sacroiliac and iliolumbar strain. At no point did Tsai state that his 2008 diagnosis of sacroiliitis had been incorrect; nor did he opine that claimant had suffered the sacroiliac and iliolumbar strain at any time before early 2010. Considering the totality of the evidence surrounding Tsai's evaluation and treatment of claimant, the board reasonably could interpret his 2010 reports *not* to be "a revocation of his earlier [disability] authorization for the noncompensable 'sacroiliitis.'" Accordingly, claimant's first argument presents no basis for reversal of the board's order.

In the alternative, claimant argues that the board erred when it declined to award TTD benefits starting in 2009 based on Movius's reports authorizing temporary disability compensation. As explained above, the board found that "Tsai, not Movius, was 'primarily responsible for the treatment'" of claimant's compensable injury and was, therefore, her attending physician. *See* ORS 656.005(12)(b) ("'attending physician' means a doctor, physician or physician assistant who is primarily responsible for the treatment of a worker's compensable injury" and who meets certain other requirements). Because Movius was not claimant's attending physician, the board concluded, her report could not form the basis of a claim for TTD benefits.[2]

_____

[2] The ALJ also determined that, because Dr. Movius was not a member of employer's MCO, she would not have been able to authorize TTD benefits for

Claimant implicitly acknowledges that only a worker's "attending physician or nurse practitioner" can authorize TTD benefits. *Cf. Altamirano v. Woodburn Nursery, Inc.*, 133 Or App 16, 21, 889 P2d 1305 (1995) ("Only an attending physician may authorize payment of temporary [disability] compensation.").[3] Claimant also appears to acknowledge that Tsai was her attending physician during at least some periods of time, as she does not contend that Movius *always* was her attending physician, but rather claims only that Movius "assumed the role of [her] attending physician" for a period of "approximately a year." In particular, claimant argues, the record does not support the board's determination that Movius was not her attending physician during early 2009, when she opined that claimant could not do the work for which she was trained. In support of that argument, claimant focuses on (1) undisputed evidence that claimant treated frequently with Movius during 2008 and 2009, and (2) Tsai's February 2010 statement that he had not "always been the primary provider treating [claimant's] injuries." In response, employer argues that substantial evidence supports the board's finding that Movius was not claimant's attending physician.

Again, we agree with employer. Significantly, under the workers' compensation statutes, an injured worker's attending physician is not the only medical provider who can provide medical services to the worker. Rather, an "attending physician * * * may refer the [worker] to another [physician] for a consultation or for specialized treatment, and the medical services provided by the consulting physician or treating specialist will continue to be covered as long as they are authorized by the attending physician." *Country Mutual Ins. Co. v. Mendoza*, 148 Or App 397, 401-02, 939 P2d 674 (1997); *see* OAR 436-010-0220(2) (specifying circumstances under which the attending physician or authorized nurse practitioner may refer the worker to other medical service providers for treatment or consultation).

---

claimant even if she had been primarily responsible for claimant's care. The board did not address that issue.

[3] In the context of TTD benefits, "authorization" has a broad meaning. An attending physician's "authorization" of such benefits simply "connotes [that] physician's contemporaneous approval excusing an injured worker from work." *Lederer v. Viking Freight, Inc.*, 193 Or App 226, 237, 89 P3d 1199, *adh'd to as modified on recons*, 195 Or App 94, 96 P3d 882 (2004).

Under those statutes, Tsai, as claimant's attending physician in 2008, could refer claimant to other medical service providers for treatment and, in doing so, would not abandon his role as the attending physician. According to the board, that is exactly what transpired. Tsai stated in early 2008 that he was "the primary physician caring for" claimant. He repeated that assertion on January 14, 2009. At that point, claimant had already seen Movius for evaluation or treatment at least 16 times, starting in May 2008. The board reasonably could infer from that evidence that Movius had not become *primarily* responsible for treating claimant's compensable injury. In other words, the board reasonably could determine that, despite Movius having provided specialized treatment for what she diagnosed as sacroiliac instability or strain, Tsai retained primary responsibility for claimant's care. At least, that is one permissible inference to be drawn from Tsai's January 2009 assertion that he still was claimant's "primary physician." As the board put it, Tsai "did not abdicate his status as the physician who was 'primarily responsible' for claimant's compensable injuries" even though "several other physicians, including Movius, consulted and participated in claimant's treatment."

On this record, the board was not compelled to find—as claimant appears to suggest—that claimant changed her attending physician, pursuant to ORS 656.245(2)(a), from Tsai to Movius sometime after January 14, 2009 (when Tsai identified himself as the "primary physician caring for" claimant), and again changed her attending physician (this time from Movius back to Tsai) by January 2010, when Tsai again identified himself as claimant's "primary physician."[4] To the contrary, substantial evidence and reason support the board's determination that Movius was not claimant's attending physician when she opined, in early 2009, that claimant was unable to work because of her sacroiliac and iliolumbar strain. *See Safeway Stores, Inc. v. Little*, 107 Or App 316, 320, 811 P2d 1384 (1991) (treating identification of a claimant's attending physician as a factual finding that is reviewed for substantial evidence).

_____

[4] We note that the record includes no indication that Dr. Movius ever "notif[ied] the responsible insurer or self-insured employer" that claimant had selected her to be claimant's attending physician, as ORS 656.252(5) would have required her to do "not later than five days after the date of the change [of attending physicians] or the date of first treatment."

Claimant also argues that the board's reasoning with respect to Movius is flawed because it stated that Movius only "for a brief period of time consulted on an element of claimant's compensable injury." According to claimant, that statement is not supported by the record, which demonstrates that claimant had many sessions with Movius in 2008 and 2009. Although the board's use of the word "brief" may at first glance seem peculiar, given the number of treatments claimant received from Movius, the sentence in which the board used that word must be read in the context of the entire order. In that context, the word "brief" is a permissible characterization of the period of time during which Movius treated claimant (from May 2008 through August 2009), when compared to the total length of time during which claimant received evaluation and treatment following her April 2006 work injury. Although another fact-finder might not have chosen to characterize that period of time as "brief," the board's use of the word presents no basis for reversal of its order.

In its cross-petition for judicial review, employer challenges the board's determination that Tsai *did* authorize TTD benefits for the compensable sacroiliac and iliolumbar strain in January 2010, as reflected by two reports he authored that month. The order on review explains the board's reasoning on that point as follows:

"In those [two January 2010] documents, Dr. Tsai implicitly considered the denied sacroiliitis and the sacroiliac and iliolumbar strain as two separate conditions. He also attributed claimant's severe impairment to residual back pain from the compensable sacroiliac and iliolumbar strain, and noted that this pain rendered her unable to return to work. Dr. Tsai subsequently stated that he found Dr. Movius's diagnosis of sacroiliac and iliolumbar strain to be reasonable in light of claimant's responses to deep ligament injections, and also in light of Dr. Movius's expertise.

"Although the ALJ found that Dr. Tsai essentially changed his opinion without sufficient explanation, we conclude that this changed opinion was based on the receipt of new information from Dr. Movius (consisting of many pages of medical evaluation and a physical capacity form) and a letter in which she opined that claimant's sacroiliac and

iliolumbar condition would prevent her from returning to her regular work. We find that Dr. Tsai's concurrence with this opinion sufficiently authorized temporary disability beginning January 14, 2010. Accordingly, we reverse that portion of the ALJ's order that declined to award temporary disability benefits."

(Citations and footnotes omitted.)

Employer first contends that the board's finding is not supported by substantial evidence because the record does not "contain evidence that the conditions for which Tsai authorized disability changed on January 14, 2010." But employer does not cite any authority for the proposition that, once Tsai purported to authorize TTD benefits based on sacroiliitis, his later authorization of TTD benefits based on the compensable sacroiliac and iliolumbar strain did not obligate employer to pay those benefits unless claimant's *condition* actually had changed since the first, ineffective, authorization. Rather, it is sufficient that Tsai's *opinion* regarding the cause of claimant's disability had changed by the later date, prompting him to authorize TTD benefits based on the compensable condition. *Cf.* ORS 656.262(4)(a) (TTD benefits "shall be paid" within a specified time "if the attending physician * * * authorizes the payment of temporary disability compensation.").

Employer also argues that the record does not support the board's finding that Tsai determined that claimant was unable to return to work because of the sacroiliac and iliolumbar strain. We disagree. In January 2010, Tsai reported that claimant had "pain from both the sacroiliac/lumbar strain as well as the sacroiliitis." He also stated that the pain associated with claimant's strain caused "severe" impairment, in that claimant was in pain every day "and virtually at all times," was impaired in "ambulation and any lifting/bending activities," and had been "unable to maintain her previous job position as a result." Later in January, Tsai reiterated that claimant's "sacroiliac and iliolumbar strain" caused her "debilitating pain." Those reports, along with Tsai's express concurrence with Movius's opinion, adequately support the board's conclusion that claimant was entitled to TTD benefits starting in January 2010.

Finally, employer asserts that the board's conclusion that claimant was entitled to TTD benefits starting in January 2010 conflicts with the board's adoption of the ALJ's factual findings, which include an ultimate finding that "[n]o attending physician authorized [TTD] for the sacroiliac and iliolumbar conditions deemed compensable * * *." In light of that finding, employer argues, the board's conclusion that claimant *was* entitled to TTD benefits makes no sense.

We reject that argument without extended discussion, except to note that the "finding" on which employer relies is included in the section of the ALJ's opinion and order labeled "ultimate findings of fact," not in the section labeled "findings of fact." The board's order on review expressly adopted only the latter section of the ALJ's opinion, not the former. Consequently, there is no inherent contradiction between the adopted factual findings and the board's ultimate conclusion that claimant is entitled to TTD benefits as of January 14, 2010.

Affirmed on petition and on cross-petition.